**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

WILLIAM EUGENE LEVENTHAL,

    Plaintiff,

vs.

SGT. DANIEL SCHAFFER, LT. JEFF RITZMAN, AND UNKNOWN EMPLOYEES OF THE IOWA STATE PATROL,

    Defendants.

No. C 07-4059-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* .................................................... 2
   A. *Factual Background* ........................................ 3

*II. LEGAL STANDARDS* ............................................. 6

*III. LEGAL ANALYSIS* ................................................ 8
   A. *Official Capacity Claims Against The Defendants* .............. 9
   B. *Individual Capacity Claims Against The Defendants* ........... 11
      1.   *The Defendants' arguments based on immunity* ......... 11
      2.   *The Defendants' remaining arguments* ................ 17
   C. *Attorney Fees* ............................................ 19

*IV. CONCLUSION* ................................................... 20

## I. INTRODUCTION

Plaintiff William Eugene Leventhal, acting *pro se*, commenced this civil action for damages pursuant to 42 U.S.C. § 1983 and certain "applicable" sections of Title 28[1] by filing a complaint against defendant Sergeant Daniel Schaffer, defendant Lieutenant Jeff Ritzman, and defendant Unknown Employees of the Iowa State Patrol (collectively, the Defendants) on July 27, 2007. Dkt. # 1. Leventhal claims Schaffer violated his federal and state constitutional rights by using excessive force and unlawfully arresting him for disorderly conduct on July 29, 2005 during the Register's Annual Great Bicycle Ride Across Iowa (RAGBRAI). Leventhal claims Ritzman, as well as possibly other unknown employees of the Iowa State Patrol, condoned and endorsed defendant Schaffer's alleged illegal actions. Leventhal sues the Defendants in their official and individual capacities, alleges damages in the amount of $63,000, and requests attorney fees under 42 U.S.C. § 1988.

---

[1] Leventhal's complaint stated: "[C]iting the same circumstances, [Plaintiff] complains under the applicable section of U.S.C. [§] 28, relative to 'Intentional Torts' (false arrest, malicious prosecution and intentional infliction of emotional distress)." Dkt. # 1. While Leventhal did not mention particular sections of Title 28, his reference to intentional torts reveals he likely means to complain under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* Such a claim, however, is not available to Leventhal because he is not suing a federal employee. 28 U.S.C. § 2671 (defining who is an "employee of the government"); *see Washington v. DEA*, 183 F.3d 868, 873 (8th Cir. 1999) ("The United States may be held liable for negligent or wrongful acts by federal employees committed while acting within the scope of their employment under the FTCA."). The Defendants, perhaps recognizing this, have not addressed Leventhal's claims under the FTCA, but as state law tort claims. The court will generously do the same, *White v. Kautzky*, 494 F.3d 677, 680 n.1 (8th Cir. 2007) ("[W]e liberally construe pro se complaints. . . ."), and any claims against the defendants based on the FTCA are dismissed.

Leventhal supplemented his complaint on August 24, 2007 to correct two typographical errors. Dkt. # 4. On September 27, 2007, and after waiving service of the complaint, the Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. # 7. Leventhal filed a resistance to the Defendants' motion on October 15, 2007. Dkt. # 8. Leventhal thereafter requested permission to supplement his resistance to the Defendants' motion to dismiss and to file documents in this case via facsimile. Dkt. # 9. The court permitted Leventhal to supplement his resistance as requested, but denied him the ability to file documents via facsimile. Dkt. # 10; *see* N.D. IA. L.R. 5.2(c) ("All documents submitted to the Clerk of Court for filing by parties proceeding pro se must be in paper form."). Leventhal supplemented his resistance to the Defendants' motion to dismiss on October 29, 2007. Dkt. # 11. The matter is now fully submitted. The case is scheduled for bench trial on February 9, 2009.[2]

### *A. Factual Background*

As explained more fully below, in considering a motion to dismiss under Rule 12(b)(6), "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Therefore, for purposes of the Defendants' Rule 12(b)(6) motion to dismiss, the court will set forth the relevant factual background as stated in Leventhal's complaint and accompanying materials.[3] *See*

---

[2] This case was originally assigned to the Honorable Donald E. O'Brien, but the case was transferred to the undersigned because of a conflict of interest between Senior Judge O'Brien and Leventhal. Dkt. # 3.

[3] Leventhal attached six "exhibits" to his complaint: 1) the police report to his
(continued…)

*Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005) (recognizing that exhibits attached to a complaint are properly considered when deciding motions to dismiss, and citing Fed. R. Civ. P. 10(c) and *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002)).

Leventhal was arrested by Sergeant Schaffer on July 29, 2005 for disorderly conduct. Leventhal was participating in RAGBRAI at the time and Schaffer was on duty

---

[3](…continued)
arrest on July 29, 2005 for disorderly conduct, 2) his appearance bond for his arrest, 3) a letter from Senior Judge O'Brien explaining his involvement with Leventhal after Leventhal's arrest, 4) an email dated August 21, 2005 from Leventhal to the county prosecutor explaining the events surrounding the arrest, 5) a letter dated September 23, 2005 to the Honorable Sherry Nichols concerning the disposition of the disorderly conduct charge against him, and 6) the order dismissing the disorderly conduct charge against Leventhal pursuant to the parties deferred prosecution agreement. A civil cover sheet also accompanied Leventhal's complaint. Unfortunately, these exhibits and the complaint do not provide a detailed factual background--even one from Leventhal's perspective. Perhaps the best statement of the case comes from the police report attached to Leventhal's complaint. Leventhal states in his complaint, however, that "the report, in total, [is] false." Dkt. # 1. Therefore, even the police report is of little assistance, and the factual background as recounted by the court can only be very general.

Leventhal did set forth many additional factual allegations and exhibits in his resistance. At this point in the proceedings, however, the court cannot look beyond the plaintiff's complaint without turning the Defendants' motion into a motion for summary judgment. While tempting, the court declines to do that. *See* Fed. R. Civ. P. 12(d) (instructing the court to treat a 12(b)(6) motion as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court"); *see also McAuley v. Federal Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007) (reversing the district court's order because the district court considered matters outside the pleadings on a motion to dismiss, and therefore should have treated the motion as one for summary judgment); *Gilmore v. County of Douglas*, 406 F.3d 935, 939 (8th Cir. 2005) ("Generally, a district court is supposed to refrain from considering facts not referenced in a complaint when considering a motion to dismiss.").

4

in his capacity as an Iowa State Patrolman to provide security for the event. The day before his arrest, Leventhal had a confrontation with bicyclists from Team Bad Boys in a bar during a stop on the RAGBRAI route near Provotin, Iowa. Leventhal complained of Team Bad Boys' actions to two Iowa State Patrolmen that day. The next day, Leventhal wanted to make sure he did not have any further confrontations with Team Bad Boys. As a result, Leventhal reported the confrontation to Schaffer and requested that Schaffer inquire into the situation and secure Leventhal's safety. Schaffer did so that afternoon by talking to members of Team Bad Boys. Later that afternoon, Schaffer met up with Leventhal to discuss what Team Bad Boys had told Schaffer. Leventhal believed Schaffer was taking sides with Team Bad Boys and disregarding Leventhal's version of events. Schaffer then arrested Leventhal for disorderly conduct in violation of Iowa Code § 723.4(3).[4]

Schaffer placed Leventhal in handcuffs and seated Leventhal in the front seat of Schaffer's patrol car so that Leventhal was sitting on his handcuffed hands. The handcuffs were on so tight that it caused Leventhal severe pain, and Schaffer refused to loosen the handcuffs upon many requests to do so. The handcuffs caused strain and pain to Leventhal's arms, hands, wrists, and shoulders. Schaffer drove Leventhal to Decorah, Iowa, where Leventhal was booked. Leventhal made bail and was released later that day. Eventually, the charge was dismissed pursuant to a deferred prosecution agreement.

Leventhal subsequently filed an administrative complaint. Lieutenant Ritzman investigated the complaint and refused to provide any information to Leventhal about the investigation, except for Ritzman's finding that no wrong doing was committed.

---

[4] A person commits a simple misdemeanor under section 723.4(3) when he or she "[d]irects abusive epithets or makes any threatening gesture which the person knows or reasonably should know is likely to provoke a violent reaction by another."

## II. LEGAL STANDARDS

The legal standards governing a motion to dismiss are often cited and are well-known to this court. Two recent developments, however, have altered the legal landscape concerning the court's analysis of a motion to dismiss. The most recent development is purely cosmetic. Effective December 1, 2007, Federal Rule of Civil Procedure 12 was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed. R. Civ. P. 12 advisory committee's note. The advisory committee notes make it clear that the "changes are to be stylistic only." *Id*. The stylistic changes to Rule 12(b)(6) are in fact minimal, as Rule 12(b)(6) remains the domain of the defense "for failure to state a claim upon which relief can be granted." *Id*. 12(b)(6). Thus, the court need not alter its well known review of the pending motion to dismiss as a result of the recent amendment.

However, a recent Supreme Court decision, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), requires the court to modify its substantive review of the motion to dismiss. Prior to *Bell Atlantic*, the Eighth Circuit Court of Appeals stated:

> The standard for a district court to employ in ruling on a motion to dismiss is clear. A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.

*Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (emphasis added) (internal citations and quotations omitted); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove *no set of facts* in support of

his claim which would entitle him to relief." (emphasis added)). In *Bell Atlantic*, the Court retired the generous and often disparaged "no set of facts" language because it permitted an "approach to pleading [that] would dispense with any showing of a reasonably founded hope that a plaintiff would be able to make a case." 127 S. Ct. at 1968-69. Unfortunately, the Eighth Circuit Court of Appeals has not elaborated on the Supreme Court's decision in *Bell Atlantic*. *See Gregory v. Dillard's, Inc.*, 494 F.3d 694, 710 (8th Cir. 2007) (only Eighth Circuit decision addressing *Bell Atlantic*, albeit briefly, and decision was vacated for rehearing en banc). Fortunately, other Circuit Court of Appeals have elaborated on *Bell Atlantic*. *E.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (2d Cir. 2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

Under *Bell Atlantic*, it is now understood that complainants have an obligation to provide the grounds of their entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. at 1964-65. "[T]he factual allegations in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Killingsworth*, 507 F.3d at 618 (quoting *Bell Atlantic*, 127 S. Ct. at 1965). Otherwise, the complainant fails to state a claim upon which relief can be granted because they "have not nudged their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S. Ct. at 1974. Thus, the complaint must contain "enough facts to state a claim to relief that is plausible on its face," although it does not have to contain "fact pleading of specifics." *Id.*; *see Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) ("Specific facts are not necessary [under Federal Rule of Civil Procedure 8(a)(2)."); *Airborne Beepers & Video, Inc. v. AT&T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) (noting *Erickson* made it clear "that [*Bell Atlantic v.*] *Twombly* did not signal a switch to fact-pleading in the federal courts"). Finally, although *Bell Atlantic* might have done away with the "no set of facts" language, it did not change the

7

requirement that "when ruling on a motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson*, 127 S. Ct. at 2200; *see, e.g.*, *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant].").

### III. LEGAL ANALYSIS

Leventhal has asserted claims against the Defendants in their individual and official capacities. *See Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989) ("[L]itigants wishing to sue government agents in both capacities should simply use the following language: 'Plaintiff sues each and all defendants in both their individual and official capacities.'"). The United States Supreme Court explained the difference between suits against persons in their individual and official capacities in this way:

> Personal-capacity [(individual capacity)] suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.
> On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More

> is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played part in the violation of federal law. When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law [(qualified immunity)]. In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment. While not exhaustive, this list illustrates the basic distinction between personal- and official-capacity actions.

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citations, quotations, and footnotes omitted); *see Clay v. Conlee*, 815 F.2d 1164, 1169-70 (8th Cir. 1987) (explaining the difference between individual and official capacity suits). Because of these differences, the court will analyze Leventhal's official and individual capacity claims separately in addressing the Defendants' motion to dismiss.

### *A. Official Capacity Claims Against The Defendants*

The Defendants have asserted an Eleventh Amendment defense in their motion to dismiss. The Eleventh Amendment generally bars plaintiffs from suing a state for monetary relief in federal court, *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he Eleventh Amendment bars suits in federal court 'by private parties seeking to impose a liability which must be paid from public funds in the state treasury.'" (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974))), and the official-capacity claims against Schaffer and Ritzman are, in fact, suits against the state of Iowa, *id.* (holding that suits against state

officials in their official capacities are suits against the state). "When a state is directly sued in federal court, it must be dismissed from litigation upon its assertion of Eleventh Amendment immunity unless one of two well-recognized exceptions exist." *Barnes v. Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). Leventhal has not argued that either of the two exceptions, congressional abrogation or state waiver, apply. *See id.* at 64-65. Moreover, consistent with this court's several past analyses of similar claims in these circumstances, *see, e.g.*, *Jacobsen v. DOT*, 332 F. Supp. 2d 1217, 1224-30 (N.D. Iowa 2004), the court does not find that either exception applies. Congress has not abrogated Iowa's Eleventh Amendment immunity to suit relative to Leventhal's claims by enacting valid legislation under the Commerce Clause or Section 5 of the Fourteenth Amendment. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) (noting Congress has the power to do so). Moreover, by enacting the Iowa State Tort Claims Act and waiving its immunity to suit in state court, Iowa has not waived its immunity to suit in federal court. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) ("[I]n order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*."); *Tinius v. Carroll County Sheriff Dep't*, 255 F. Supp. 2d 971, 984-85 (N.D. Iowa 2003) (noting the Iowa State Tort Claims Act "limits waiver of Iowa's sovereign immunity to lawsuits brought in Iowa state courts"). As a result, Leventhal's claims against the Defendants in their official capacities are prohibited, as this court lacks jurisdiction to entertain such claims. *See Bakhtiari v. Lutz*, 507 F.3d 1132, 1138 (8th Cir. 2007) (holding plaintiff's claims for relief under §§ 1981 and 1983 and under state law against the defendants in their official capacities were barred "because these state defendants have not waived Eleventh Amendment immunity"); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, (6th Cir. 2007) ("With respect to the state law claims against the defendant officials in

their official capacity, the Eleventh Amendment provides for immunity from suit in federal court."); *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir. 2000) ("The Eleventh Amendment bars federal court jurisdiction over state law claims against unconsenting states or state officials when the state is the real, substantial party in interest, regardless of the remedy sought."); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999) ("Nor can a section 1983 suit be asserted against the commissioners of ACLEST in their official capacities, because such a suit is no different from a suit against the state itself.").

### B. Individual Capacity Claims Against The Defendants
#### 1. The Defendants' arguments based on immunity

Although the Defendants fail to carefully distinguish between the official capacity and individual capacity nature of Leventhal's claims, the Defendants argue that because any judgment against them will be paid by the state under Iowa Code § 669.21,[5] "[t]he state is therefore the real party in interest here, even to the extent that defendants are sued in their individual capacity." Dkt. # 7. While the court agrees with the Defendants that the state is the real party in interest when the Defendants are sued in their official capacities, Iowa's indemnity statute does not confer Eleventh Amendment immunity to the

---

[5] The statute reads:
> Except as otherwise provided in subsection 2 [(when the employee acts willfully or fails to cooperate in the investigation)], the state shall defend any employee, and shall indemnify and hold harmless an employee against any claim . . . , including claims arising under the Constitution, statutes, or rules of the United States or of any state.

Iowa Code § 669.21 (2006).

Defendants when they are sued in their individual capacities. No Iowa or Eighth Circuit case has specifically addressed this issue, but other courts consistently hold that a state indemnity statute like Iowa's does not confer Eleventh Amendment immunity onto a defendant in his individual capacity. *See Hudson v. City of New Orleans*, 174 F.3d 677, 687 n.7 (5th Cir. 1999) ("[T]he existence of an indemnification statute promising to pay judgments when an officer is sued in his individual capacity does not extend the Eleventh Amendment's protections around the officer."); *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1577-78 (11th Cir. 1994) (holding a state's liability trust fund did not "extend the state's Eleventh Amendment immunity to its employees sued in their individual capacity," and noting "the state acts of its own volition to protect its employees from money damages arising from their liability," and "there is no use for the insurance protection if the employee is immune from suit by virtue of the state establishing the protection").[6] This court is likewise unwilling to extend Eleventh Amendment immunity to officials sued in their individual capacity when a state statute promises indemnity in the event the officials are personally liable. *See Murphy v. State of Arkansas*, 127 F.3d 750,

---

[6] The United States Supreme Court has only commented on this issue in passing:

> [The Supreme Court] has not decided which arrangements between a State and a nominal defendant are sufficient to establish that the State is the real party in interest for Eleventh Amendment purposes. It may be that a simple indemnification clause, without more, does not trigger the doctrine. Lower courts have uniformly held that States may not cloak their officers with a personal Eleventh Amendment defense by promising, by statute, to indemnify them for damage awards imposed on them for actions taken in the course of their employment.

*Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 316 n.9 (1990) (Brennan, J., concurring).

754 (8th Cir. 1997) ("[T]he Eleventh Amendment does not bar damage claims against state officials acting in their personal capacities."). Thus, the Defendants' argument on this point is rejected.

Immunity, however, may still be available to the Defendants on a "qualified" basis. Qualified immunity, a concept very different from Eleventh Amendment immunity, can extend to persons sued in their individual capacities. *See, e.g.*, *id.* at 754-55 (8th Cir. 1997) (discussing the Eleventh Amendment immunity defense concerning official capacity claims and the qualified immunity defense concerning individual capacity claims). "Qualified immunity protects public officials from § 1983 damage actions if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Defendants argue Schaffer is entitled to qualified immunity regarding Leventhal's § 1983 claim against Schaffer for allegedly arresting Leventhal without probable cause. To determine whether Schaffer is entitled to qualified immunity, the court must undertake "a two-step analysis." *Weaver v. Clark*, 45 F.3d 1253, 1255 (8th Cir. 1995); *see Saucier v. Katz*, 533 U.S. 194, 201 (2001) (noting two questions must be answered). "The threshold question is whether the plaintiff has alleged the violation of a constitutional right." *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997); *see Saucier*, 533 U.S. at 201 ("[D]o the facts alleged show the officer's conduct violated a constitutional right?"); *Bradford*, 394 F.3d at 1015 ("'[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.'" (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998))). If not, then the defendant is entitled to qualified immunity. *See Clemmons v. Armontrout*, 477 F.3d 962, 966 (8th Cir.

13

2007) (holding the defendant did not violate plaintiff's constitutional rights and was therefore entitled to qualified immunity); *Bradford*, 394 F.3d at 1015 (finding plaintiff's "complaint fails to state a First Amendment § 1983 claim," and, "[a]ccordingly, defendants are entitled to qualified immunity"). If so, then the next question is "whether that right was 'clearly established' at the time of the alleged violation." *Weaver*, 45 F.3d at 1250; *see Saucier*, 533 U.S. at 201 ("[T]he next, sequential step is to ask whether the right was clearly established."). "A right is 'clearly established' when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Birkenholz v. Sluyter*, 857 F.2d 1214, 1216 (8th Cir. 1988); *see Clemmons*, 477 F.3d at 965 ("To determine whether a right is 'clearly established,' we ask 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" (quoting *Saucier*, 533 U.S. at 202)); *Weaver*, 45 F.3d at 1256 ("Put another way, the specific acts alleged need not have been previously held unlawful, but the unlawfulness of the acts must have been apparent in light of pre-existing law."). If the violation is not clearly established, then the defendant is entitled to qualified immunity, and vice versa. *See Weaver*, 45 F.3d at 1256 (holding qualified immunity existed "[b]ecause [plaintiff] has alleged the violation of a clearly-established constitutional right"). Importantly, because the court is addressing the matter in a motion to dismiss, the answers to these two questions are entirely dependent upon what the plaintiff's complaint alleges. *See Dornheim v. Sholes*, 430 F.3d 919, 926 (8th Cir. 2005) ("A rule 12(b)(6) dismissal based on qualified immunity is appropriate 'when the immunity is established on the face of the complaint.'" (quoting *Whisman*, 119 F.3d at 1309)); *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996) (recognizing that qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint").

Leventhal has alleged a violation of a constitutional right, namely his Fourth Amendment right to be free from arrest without probable cause. *Habinger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996). Whether that right was violated is a difficult question, particularly in light of the *pro se* nature of Leventhal's complaint and the very general facts he has alleged. The best information about the arrest comes from the police report attached to Leventhal's complaint. This information, however, generally contradicts Leventhal's claim and supports the Defendants' motion to dismiss. Leventhal rejects the report in his complaint as, "in total, false." Dkt. # 1.

As a result, the court does not agree with the Defendants that Leventhal has "specified in what ways he believes this report to be false." Dkt. # 7. While Leventhal does object to the police report in some specific ways, he ultimately claims the whole report is false. As a result, the facts in the police report that the Defendants rely on to support their claim of qualified immunity are unfounded-at least at this stage in the proceedings. *See Hafley*, 90 F.3d at 267 ("The defendants argue that the allegations in the complaint can be construed differently . . . . Such an argument is irrelevant, as we must construe the complaint in the light most favorable to Hafley."). Nevertheless, without many "specific acts alleged," *Weaver*, 45 F.3d at 1256, it is particularly difficult for the court to determine whether Leventhal's rights were violated or whether it is "'sufficiently clear that a reasonable official would understand that what he is doing violates that right,'" *see Murphy*, 127 F.3d at 755 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The court, however, is aware of the *pro se* nature of Leventhal's complaint and the court's corresponding obligations. *White v. Kautzky*, 494 F.3d 677, 680 n.1 (8th Cir. 2007) ("[W]e liberally construe pro se complaints. . . ."). As a result, the court is unwilling to treat Leventhal's complaint as rigorously as complaints filed by represented litigants. Moreover, under this more generous perspective, the court does not find that the

Defendants have established Schaffer's claim to qualified immunity on the face of the complaint. If the police report is totally false as Leventhal asserts, then there is nothing that shows Leventhal was arrested with probable cause or that any violation of Leventhal's rights was not clearly established. Of course, there is also very little from Leventhal's complaint that shows the opposite: that Leventhal was arrested without probable cause and that it was a clear violation of his rights. But the court believes a generous reading of Leventhal's *pro se* complaint satisfactorily shows a violation of his right to be free of unlawful arrest and that such a violation was clearly established. *See Weaver*, 45 F.3d at 1256 ("Because Weaver has alleged the violation of a clearly-established constitutional right, the defendant prison officials are not entitled to dismissal on the basis of qualified immunity."). This does not mean that qualified immunity is not available to the Defendants. The court simply holds that qualified immunity, as of now, has not been established.[7]

---

[7] The Eighth Circuit Court of Appeals has stated that qualified immunity is usually determined in motions for summary judgment:

> Qualified immunity is usually raised in a motion for summary judgment after a limited amount of discovery has been conducted to determine whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation.

*Whisman*, 119 F.3d at 1309; *see Clemmons*, 477 F.3d at 965-67 (addressing qualified immunity at the summary judgment stage); *Robinson v. White County*, 452 F.3d 706, 709-12 (8th Cir. 2006) (same), *vacated in part*, 459 F.3d 900 (8th Cir. 2006); *Murphy*, 127 F.3d at 755 (same); *Habiger*, 80 F.3d at 295-97 (same). In *Bradford*, perhaps the only Eighth Circuit Court of Appeals case to uphold the dismissal of a plaintiff's claims on the basis of qualified immunity grounds at the motion to dismiss stage, the court did so because there was not "any First Amendment content to [the plaintiff's claims]." 394 F.3d

(continued…)

### 2. *The Defendants' remaining arguments*

The Defendants also argue that the federal § 1983 claims against Schaffer for unlawful arrest and excessive force should be dismissed because the allegations alleged by Leventhal are insufficient to establish a claim. As the court found regarding the Defendants' claim of qualified immunity concerning Leventhal's allegation of unlawful arrest, there is sufficient information in Leventhal's *pro se* complaint to establish a violation of his constitutional right to be free of unlawful arrest. Leventhal objects to the police report that supports the Defendants, and otherwise advances minimal factual allegations to support a claim of unlawful arrest. Thus, Leventhal has stated a plausible claim of unlawful arrest, and this claim against Schaffer in his individual capacity will not be dismissed. *See Bell Atlantic*, 127 S. Ct. at 1965 ("[T]he factual allegations in the complaint 'must be enough to raise a right to relief above the speculative level.'").

Likewise, Leventhal's § 1983 claim of alleged excessive force during his arrest in violation of the Fourth Amendment will not be dismissed. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[*A*]*ll* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ."). "An 'actual injury' must be shown to support an excessive force claim under the Fourth Amendment." *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005) (citing *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995)). An actual injury is more than "de minimus," *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003), but less than "significant," *Dawkins*, 50 F.3d at 535. In this case, Leventhal's *pro se* complaint alleges

---

[7](…continued)
at 1015-16. Thus, there could be no violation of a constitutional right.

excessive force that resulted in "severe pain" and "strain and pain" to his arms, shoulders, hands, and wrists. Although the court believes Leventhal will have a difficult time supporting a claim of excessive force based on what he has volunteered in his complaint, *see, e.g.*, *Crumley*, 324 F.3d at 1008 (noting "that for the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries"), at this stage in the proceedings, and again factoring in the *pro se* nature of Leventhal's complaint, the court believes Leventhal has stated a "plausible" claim of excessive force to survive the Defendants' motion to dismiss, *Bell Atlantic*, 127 S. Ct. at 1977.

The Defendants also argue that the federal § 1983 claims against Ritzman in his individual capacity should be dismissed because Ritzman had no personal involvement in the alleged deprivation of Leventhal's rights during the unlawful arrest and use of force.

> Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. . . . [The plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.

*Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006). Leventhal claims that Ritzman is liable under § 1983 as a result of condoning and endorsing Schaffer's alleged unconstitutional conduct, namely the alleged unlawful arrest and use of force. There is no claim, however, that Ritzman was directly involved in either of these alleged constitutional violations, or that Ritzman was even present when the alleged conduct occurred. Therefore, the federal § 1983 claims of unlawful arrest and excessive force against Ritzman are dismissed. *See Clemmons*, 477 F.3d at 967 (dismissing claims against certain defendants because the plaintiff had not alleged the defendants were sufficiently involved in the alleged constitutional violations).

Although the Defendants moved to dismiss this entire "action" against them, they have not argued for the dismissal of the state law claims against the Defendants in their individual capacities. As the court already found, all claims against the Defendants in their official capacities, including the state law claims, are dismissed because of the Eleventh Amendment. The state law claims against the Defendants in their individual capacities are not protected by the Eleventh Amendment, and seeing no other argument by the defendants that these state law claims against the defendants in their *individual capacities* should be dismissed, the court does not address them further.[8]

### C. Attorney Fees

Leventhal requests attorney fees pursuant to 42 U.S.C. § 1988. As the Defendants point out, attorney fees are not available to plaintiffs acting *pro se*. *See Coleman v. Turner*, 838 F.2d 1004, 1005 (8th Cir. 1988) ("Because appellants were not represented

---

[8] The Defendants argue the state law claims against them should be dismissed because of Eleventh Amendment immunity, because the state has not waived immunity from suit under the Iowa State Tort Claims Act, and because Leventhal failed to exhaust his administrative remedies under the Iowa State Tort Claims Act prior to bringing suit. These arguments are not relevant to Leventhal's claims against the Defendants in their individual capacities, as these arguments incorporating the Eleventh Amendment and the Iowa State Tort Claims Act relate to suits against the state (or claims against the Defendants in their official capacities). *See* Iowa Code § 669.5(2)(a) (2006) (noting that when there is a suit against a state employee acting within the scope of his or her office "the state shall be substituted as the defendant in place of the employee"); *Cooper*, 226 F.3d at 968 ("The Eleventh Amendment bars federal court jurisdiction over state law claims against unconsenting states or state officials when the state is the real, substantial party in interest, regardless of the remedy sought."); *In re Estate of Voss*, 553 N.W.2d 878, 880 (Iowa 1996) ("A tort claim *against the State* must first be presented to the State Appeal Board pursuant to the procedures detailed in Iowa Code chapter 669, Iowa's Tort Claims Act." (emphasis added)).

by counsel, they are not entitled to attorney's fees under 42 U.S.C. § 1988." (citing *Davis v. Parratt*, 608 F.2d 717, 718 (8th Cir. 1979))). Therefore, Leventhal's claim for attorney fees under § 1988 is dismissed.

## IV. CONCLUSION

All claims against the Defendants in their official capacities are dismissed. Such claims are barred by the Eleventh Amendment. The federal § 1983 claims against Ritzman in his individual capacity are also dismissed because he took no part in the alleged deprivation of Leventhal's federal rights. The federal § 1983 actions against Schaffer in his individual capacity are not dismissed, as Leventhal's *pro se* complaint sets forth a plausible claim of relief under *Bell Atlantic*, and Schaffer is not entitled to qualified immunity under the facts alleged in Leventhal's complaint. The state law claims against the Defendants in their individual capacities are also not dismissed because the court finds no relevant argument supporting their dismissal. Finally, the court dismisses Leventhal's claim for attorney fees under § 1988 because Leventhal is not represented by counsel.

Therefore, the court **grants in part and denies in part the Defendants' motion to dismiss**. The federal § 1983 claims against Schaffer in his individual capacity and the state law claims against the Defendants in their individual capacities survive. All other claims are dismissed.

**IT IS SO ORDERED.**

**DATED** this 8th day of January, 2008.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA