# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| WILLIAM EUGENE LEVENTHAL,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SGT. DANIEL SCHAFFER,<br>LT. JEFF RITZMAN, and<br>UNKNOWN EMPLOYEES IN THE<br>IOWA STATE PATROL, Possibly<br>Additionally Involved,<br><br>　　　　Defendants. | No. C07-4059-MWB<br><br>**REPORT AND RECOMMENDATION<br>ON DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT** |

　　　　This matter is before the court on the defendants' Motion for Summary Judgment. Doc. No. 23. The plaintiff William Eugene Leventhal commenced this action on July 27, 2007, by filing a Complaint against the defendants in which he seeks damages pursuant to 42 U.S.C. § 1983. In his Complaint, Leventhal claims the defendant Sgt. Daniel Schaffer violated his federal and state constitutional rights in using excessive force and unlawfully arresting him on July 29, 2005, during the Register's Annual Great Bicycle Ride Across Iowa ("RAGBRAI"). Leventhal claims the defendant Lt. Jeff Ritzman, and other unidentified employees of the Iowa State Patrol, condoned and endorsed Schaffer's actions. Leventhal seeks damages in the amount of $63,000, and attorney fees under 42 U.S.C. § 1988. *See* Doc. No. 1, supplemented by Doc. No. 4.

　　　　The defendants filed a motion to dismiss which Leventhal resisted. On January 8, 2008, the Honorable Mark W. Bennett of this court granted the motion in part and denied it in part, allowing Leventhal's section 1983 claims against Schaffer in his individual capacity, and his state law claims against the defendants in their individual capacities, to survive, and dismissing all other claims. *See* Doc. No. 14.

The defendants filed the present motion for summary judgment on August 29, 2008. Doc. No. 23. Pursuant to 28 U.S.C. § 636(b)(1)(B), Judge Bennett referred the motion to the undersigned for consideration, any necessary evidentiary hearings, and the filing of a report and recommended disposition of the motion. *See* Doc. No. 6. After receiving an extension of time from the court, Leventhal filed his *pro se* resistance to the defendants' motion to compel on October 17, 2008. Doc. No. 31. Leventhal filed a supplement to his resistance on October 22, 2008, Doc. No. 33, and an "Addendum to Conclusion in Response Brief to Motion for Summary Judgment" on October 30, 2008, Doc. No. 35. The defendants have not filed a reply, and this matter is now ripe for decision.

## *I. LEVENTHAL'S ATTEMPT TO ADD PARTIES*

Preliminarily, the court will address Leventhal's statement, on page 3 of his resistance, that "additional ISP personnel are now known and added to the complaint, as noted above." Doc. No. 31, p. 3. In the caption of his resistance, Leventhal has listed new defendants as follows: "Additional Employees Added: Lt. Stephen Loftus, Captain Mike Winter." *Id.*, p. 1. Leventhal may not unilaterally add parties to the case without following the proper procedures to do so. He must seek to amend his Complaint to add the new parties as required by Rule 15, Federal Rules of Civil Procedure, and Local Rule 15, with a showing of good cause as to why the court should allow the amendment. He must attach to his motion a copy of the proposed Amended Complaint, which must completely restate his allegations in this case. *See* LR 15. The defendants will have an opportunity to respond, and then the court will rule on the motion. Should the court allow these new defendants to be added, they will have to be served with a Summons and any Amended Complaint, they will be allowed to answer the Complaint, and then the case will proceed. To the extent Leventhal is attempting to add the new defendants simply by virtue of listing and discussing them in his resistance to the defendants' motion for summary

2

judgment, that attempt is **denied**.[1] The court now turns to consideration of the defendants' motion for summary judgment.

## II. STANDARDS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment and provides that either party to a lawsuit may move for summary judgment without the need for supporting affidavits. *See* Fed. R. Civ. P. 56(a), (b). Rule 56 further states that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). A court considering a motion for summary judgment "must view all of the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts." *Webster Indus., Inc. v. Northwood Doors, Inc.*, 320 F. Supp. 2d 821, 828 (N.D. Iowa 2004) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996)).

The party seeking summary judgment must "'inform[ ] the district court of the basis for [the] motion and identify[ ] those portions of the record which show lack of a genuine issue.'" *Webster Indus.*, 320 F. Supp. 2d at 829 (quoting *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992), in turn citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986)). A genuine issue of material fact is one with a real basis in the record. *Id.* (citing *Hartnagel*, 953 F.2d at 394, in turn citing

---

[1] *See* Order at Doc. No. 39, filed November 10, 2008, in which the court informed Leventhal that his listing of the additional defendants in the caption of his resistance did not operate to amend his Complaint to add the new parties.

3

*Matsushita*, 475 U.S. at 586-87, 106 S. Ct. at 1356). Once the moving party meets its initial burden under Rule 56 of showing there is no genuine issue of material fact, the nonmoving party, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Webster Indus*, 320 F. Supp. 2d at 829 (citing, *inter alia*, *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; and *Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997)).

Addressing the quantum of proof necessary to successfully oppose a motion for summary judgment, the Supreme Court has explained that the nonmoving party must produce sufficient evidence to permit "a reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Furthermore, the Supreme Court has held the trial court must dispose of claims unsupported by fact and determine whether a genuine issue exists for trial, rather than weighing the evidence and determining the truth of the matter. *See Anderson*, 477 U.S. at 249, 106 S. Ct. at 2510; *Celotex*, 477 U.S. at 323-24, 106 S. Ct. at 2552-53; *Matsushita*, 475 U.S. at 586-87, 106 S. Ct. at 1356.

The Eighth Circuit recognizes that "summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun-Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir. 1990) (citing Fed. R. Civ. P. 56(c)). The Eighth Circuit, however, also follows the principle that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id*. (quoting *Celotex*, 477 U.S. at 327, 106 S. Ct. at 2555); *see also Hartnagel*, 953 F.2d at 396.

Thus, the trial court must assess whether a nonmovant's response would be sufficient to carry the burden of proof at trial. *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552). If the nonmoving party fails to make a sufficient

showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552; *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990). However, if the court can conclude that a reasonable jury could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir. 1991); *Woodsmith*, 904 F.2d at 1247.

### III. FACTUAL BACKGROUND[2]

On July 28, 2005, Leventhal was participating in RAGBRAI. During a stop on the RAGBRAI route, at a bar, Leventhal had a brief but heated confrontation with a "Bill," who was participating in RAGBRAI as a member of Team Bad Boys. The confrontation arose from an obscene statement Bill had made to Leventhal some years earlier, and from an incident earlier on June 28, 2005, when Bill and two other men from Team Bad Boys threw ice water on Leventhal while he was taking a nap. Leventhal confronted Bill at the bar for the purpose of telling Bill to stop harassing him. The conversation lasted less than a minute before Leventhal and Bill were on the verge of coming to blows, and an employee at the bar stepped between the two men and asked Leventhal to leave. Leventhal complied and left the bar. He then stood outside the bar and yelled for Bill to come outside and apologize, or finish their confrontation. Leventhal admitted he probably used profanity when he was yelling for Bill to come outside. The entire incident only lasted a couple of minutes. *See* Leventhal Depo., Doc. No. 23-4, pp. 4-13, 20.[3]

---

[2] Where the undersigned makes factual findings that go beyond, or differ from, those set forth in Judge Bennett's earlier ruling on the defendants' motion to dismiss, *see* Doc. No. 14, appropriate citations to the record are included for the convenience of the court and the parties.

[3] Page numbers cited in this opinion are to the court's ECF pagination, not to the parties' pagination of their respective appendices.

Following the confrontation, Leventhal approached Iowa State Patrol officer Jonah Grier, and told him about the incident and the background that led to the confrontation. Another Trooper, Mikel Yauk, was present for a portion of Leventhal's conversation with Grier. Grier agreed to wait with Leventhal for Bill and the other members of Team Bad Boys so they could all talk and try to resolve the matter. However, when Team Bad Boys had not arrived after some time, Leventhal got tired of waiting and left the area. *Id.*, pp. 14-16.

The next day, July 29, 2005, Leventhal learned that the members of Team Bad Boys were in another bar on the RAGBRAI route in or near Provotin, Iowa. He went by the bar and saw the bikes owned by members of Team Bad Boys. He then approached the defendant Schaffer, who was on duty with the Iowa State Patrol to provide security for RAGBRAI. Schaffer was parked by the side of the road a few miles outside of Provotin. Leventhal told Schaffer about the previous day's confrontation with Team Bad Boys, and asked Schaffer to talk with Team Bad Boys and see if he could get the harassment of Leventhal to stop. According to Leventhal, Schaffer told him that even if Bill or someone else put their hands on him or took a swing at him, under Iowa law he could not defend himself; he would have to walk away or he could be arrested. *Id.*, p. 18. Leventhal responded that if someone put their hands on him, he was going to defend himself. As Leventhal was talking with Schaffer, he used some profanity, but he did not direct any profanity at Schaffer. *Id.*, p. 20. According to Leventhal, Schaffer cut him off before he could finish telling Schaffer everything that happened. Schaffer stated he was "the law out here," and he would do what was necessary to end the harassment. Schaffer then left the area. *Id.*, pp. 18-19.

Leventhal had a second conversation with Schaffer later on the 29th, in Spillville, Iowa. Leventhal was talking with a couple and their children when Officer Grier approached him and stated Schaffer wanted to talk with him. Grier pointed out Schaffer's location, which was "30 to 50 yards," or approximately a block, from where Leventhal

was sitting. *Id.*, pp. 20-21. Schaffer was sitting in the driver's seat of his vehicle. As Leventhal approached the vehicle, Schaffer said something that Leventhal could not hear well. Schaffer rolled his window down halfway, and Leventhal had to get very close to the vehicle in order to hear Schaffer. *Id.* at 22. Schaffer indicated he had talked to the members of Team Bad Boys, who maintained Leventhal was "the bad guy." *Id.*, p. 23. According to Leventhal, Schaffer stated, "[Y]ou didn't tell me that you were the one asked to leave the bar, and the victim is not the one who's usually asked to leave the bar. You didn't tell me that." *Id.*, pp. 22-23. Leventhal responded that Schaffer had stopped him before he had a chance to finish his account of the incident, and he told Schaffer not to call him a liar. It upset Leventhal that Schaffer appeared to be calling him a liar, and appeared to be taking the side of the members of Team Bad Boys. *Id.*, p. 23.

Leventhal acknowledges he may have raised his voice "slightly," and Schaffer instructed Leventhal not to raise his voice. *Id.* Leventhal testified the following events then took place:

> Q  [By Mr. Terrones, for the defendants] Then what did you do?
>
> A  [By Leventhal] I didn't do anything. He said – I – Oh, no. I said – I said no, I think I can raise my voice to you. And then he said you're under arrest. And I said under arrest for what? Raising my voice?
> As he started to get out of the car, he said you're under arrest. I think you're a threat to me. And I had to back up as the door was coming open – as the door was coming open – And I think that's exactly what I said because it's exactly what happened.
> I had to back up as the door was coming open, and he – And I – and I said, oh, you're so sensitive nobody can raise their voice to you? Pretty much in a tone like that. And then he got out of the car, and very quickly I was arrested.

*Id.*

Schaffer got out of his car, and he and Leventhal continued to discuss matters. Leventhal testified that "for emphasis" he "might have used [his] finger," but "[i]t was not

7

anywhere near [Schaffer's] face." *Id*. He then said he did not "intentionally" put his finger near Schaffer's face, and "it certainly wasn't within an inch of his face or six inches of his face." *Id.*, pp. 23-24. Leventhal did not recall using any profanity in this encounter prior to the time Schaffer got out of his car. *Id.*, p. 24. At first, he thought Schaffer was kidding when he stated Leventhal was under arrest. Leventhal did not see how he could be a threat to Schaffer when Schaffer was in the car, with "two guys behind him and he's six foot six," and Leventhal was not armed. *Id*. When he realized Schaffer was serious about arresting him, he may have used profanity. *Id*.

Schaffer arrested Leventhal on a charge of disorderly conduct. He handcuffed Leventhal and placed him in the front seat of Schaffer's patrol car. Leventhal complained to Schaffer that the handcuffs were too tight and were causing him pain, and he asked Schaffer repeatedly to loosen the handcuffs, but Schaffer did not do so. Instead, Schaffer checked the handcuffs, and demonstrated that he could place two fingers between the cuffs and Leventhal's skin. Schaffer drove Leventhal to Decorah, Iowa, where Leventhal was booked. Leventhal posted bail and was released later that day. The disorderly conduct charge eventually was dismissed pursuant to a deferred prosecution agreement. Leventhal filed an administrative complaint against Schaffer. The complaint was investigated by Ritzman, who found no wrongdoing in Schaffer's conduct.

At Schaffer's deposition, he testified he first became concerned about Leventhal's behavior when Leventhal approached him the day before, near Provotin. He stated Leventhal initially seemed to be directing his anger towards Schaffer, and Schaffer believed the situation was escalating. As they talked, Leventhal eventually calmed down, but Schaffer stated if the situation had continued unabated, he was prepared to arrest Schaffer at that time. *Id.*, pp. 33-34. The next day, at the time of the encounter leading to Leventhal's arrest, Schaffer recalled "very clearly . . . looking at a man [Leventhal] that appeared to become immediately enraged and I remember him yelling 'don't f'ing call me a liar.'" Doc. No. 31-6, p. 20. Schaffer got out of his vehicle because he felt Leventhal

8

potentially could be a threat to him, and he "did not want to be immobilized in [his] vehicle should an altercation occur." *Id.*, p. 26. He thought Leventhal was a potential threat to his safety because Leventhal was "so enraged." *Id.*, p. 29. Although Schaffer agreed Leventhal did not make any aggressive movements toward him while he was in the car, Schaffer believed Leventhal's "facial expression . . . appeared as though [he was] becoming incensed and enraged." *Id.*, pp. 27-28. He testified that in his experience, people who "are unable to control their emotions become . . . combative, often become flush in the face, they're pensive, their body will tremble with anger, and [Schaffer has] seen that any number of times before assaults have occurred." *Id.*, p. 28.

As Schaffer got out of his vehicle, Leventhal continued to talk, but he did not attempt to make physical contact with Schaffer. *Id.*, p. 30. At the moment Schaffer got out of his vehicle, he did not believe Leventhal "had met any elements of a crime, meaning an arrest situation." *Id.*, p. 31. However, shortly thereafter, Leventhal raised his finger and pointed it at Schaffer as Leventhal "lunged" in his direction. *Id.*, p. 30. Schaffer remembers Leventhal's finger "coming directly towards [his] nose," and it was "very" close to his nose. *Id.* Schaffer indicated Leventhal appeared not to be in control of his emotions at that point and he was acting irrationally. *Id.*, p. 31. Schaffer testified Leventhal made comments like, "Go ahead and arrest me. You don't intimidate me, go ahead, f'ing arrest me," as Leventhal was moving quickly toward Schaffer "in a very quick and aggressive manner," with his finger approaching Schaffer's face. *Id.*, p. 34. Schaffer recalled grabbing Leventhal's hand as it approached his face, and maintaining control of Leventhal's wrist as he turned Leventhal to escort him to the patrol car. *Id.*, p. 35.

On the issue of the handcuffs, Schaffer recalled Leventhal complaining that the handcuffs were too tight, and Schaffer checked to be sure he could put two fingers underneath the cuffs. *Id.*, P. 37.

Officer Jonah Grier was present at the scene at the time of Leventhal's arrest. He testified during his deposition that he saw Leventhal talking with Schaffer while Schaffer was still in his patrol car, but the conversation was not loud enough for him to hear what was being said from his vantage point thirty to forty feet away. Doc. No. 23-6, p. 53. He saw Schaffer get out of his patrol car, and agreed that Leventhal had to back up in order to allow the door to open. Leventhal and Schaffer continued to talk, and shortly thereafter, Leventhal raised his voice and "became a little bit more upset." *Id.*, p. 54. Grier approached the two because he felt Leventhal "may become assaultive or may have been a situation brewing." *Id.* Grier observed Leventhal begin pointing his finger at Schaffer in what appeared "to be an aggressive manner." *Id.*, p. 57. Grier observed Schaffer place Leventhal under arrest and put handcuffs on him. He heard Leventhal complain that the handcuffs were too tight, and he observed as Schaffer checked to be sure the cuffs were not too tight. *Id.*, p. 59. He watched Schaffer put Leventhal into the patrol car, and Grier took custody of Leventhal's bike. *Id.*, pp. 63-64.

In Leventhal's Complaint, he alleges Schaffer assaulted him and used undue and unnecessary force in effecting his arrest; Schaffer filed an incomplete and false report regarding the incident; Schaffer handcuffed him so tightly, it caused Leventhal to suffer severe pain in his hands, wrists, arms, and shoulders; and Schaffer intentionally inflicted emotional and physical distress on Leventhal. Leventhal claims Ritzman was biased in his investigation of Leventhal's administrative claim against Schaffer, causing Ritzman to condone or endorse Schaffer's allegedly illegal acts, and Ritzman abused his authority both in the investigation and in refusing to give Leventhal information from the investigation.

At Leventhal's deposition, he testified he had talked with a chiropractor about "various problems" including "spasms" in his wrists, but he has not seen any medical provider for diagnostic testing or treatment of his wrists. *Id.*, p 27. Leventhal has not described any other type of assaultive conduct by Schaffer other than his claim that the handcuffs were too tight.

## IV. DISCUSSION

Preliminarily, the court feels compelled to address the general character of the parties' briefs. In the defendants' brief, they make references to Leventhal's personal history and demeanor, stating he "is obviously a person who gets emotional about things and has a problem controlling his behavior," and he "has, apparently, been angrily provoking people for decades." *Id.*, pp. 10 & 14. Leventhal obviously was irritated and offended by these types of comments, *see* Doc. No. 31, and perhaps rightfully so where, as here, the comments do nothing to serve justice or to provide proper support for the defendants' motion.

On the other hand, Leventhal has offered the court nothing but unsupported argument on the legal merits of this case. For example, he asserts, without supporting authority, that "citizens are not legally subject to arrest for arguing with peace officers, even raising their voice to peace officers and even using their hands when they talk in a non-threatening manner to emphasize their argument, or indicate that they are annoyed with a peace officer[.]" Doc. No. 35, p. 3. Instead, Leventhal has submitted dozens of pages of personal endorsements from friends and colleagues, and documents regarding his personal history. Although these do not attempt to malign the defendants, they are similarly inappropriate, and completely irrelevant to the case at bar.

The issues in this case are simple, and particularly so at the summary judgment stage. The court must determine whether issues of material fact prevent summary judgment as to (1) whether Schaffer's warrantless arrest of Leventhal was justified, (2) whether Schaffer used excessive force in accomplishing the arrest, (3) whether Schaffer is entitled to qualified immunity, and (4) whether Leventhal has met the requirements to maintain his state law claims against the defendants. None of these issues requires an examination of the parties' personal histories, or defense counsel's personal opinions and speculation regarding Leventhal's character. The defendants' assertions regarding Leventhal, and Leventhal's extensive recounting of his personal history, merely serve to

burden the record and obscure the issues. *Cf. MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1262 (2d Cir. 1996) (recognizing the availability of sanctions under Federal Rule of Civil Procedure 11 for including inaccurate characterizations of the record and inappropriate comments in a brief -- conduct that "degrades the legal profession and disserves justice").

The court now turns to consideration of the issues raised by the defendants in their motion for summary judgment. The defendants organize their motion for summary judgment into "the arrest," "excessive force," "qualified immunity," and "state claims." *See* Doc. No. 23-2. The court will address the issues raised by the defendants in similar categories.

### *A. The Arrest*

The defendants argue Schaffer's warrantless arrest of Leventhal was legally sufficient because Schaffer had probable cause for the arrest. Schaffer arrested Leventhal for disorderly conduct in violation of Iowa Code section 723.4(3), which makes it a simple misdemeanor for a person to "[d]irect[] abusive epithets or make[] any threatening gesture which the person knows or reasonably should know is likely to provoke a violent reaction by another." Because the arrest was made without a warrant, the arrest could be lawful only if supported by probable cause. As the Eight Circuit Court of Appeals explained in *Stufflebeam v. Harris*, 521 F.3d 884 (8th Cir. 2008):

> A warrantless arrest without probable cause violates the Fourth Amendment as applied to state actors by the Fourteenth Amendment. *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005). A state police officer has probable cause to arrest if the facts and circumstances within his knowledge "are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense" under state law. *United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir. 1995) (quotation omitted).

*Id.*, 521 F.3d at 886-87. *See also State v. Ceron*, 573 N.W.2d 587, 592 (Iowa 1997) (warrantless arrest must be supported by probable cause in order to be valid).

"The validity of a warrantless arrest by a state officer is an issue governed in the first instance by state law." *United States v. Rambo*, 789 F.2d 1289, 1293 (8th Cir. 1986) (citing *Johnson v. United States*, 333 U.S. 10, 15 n.5, 68 S. Ct. 367, 369-70 n.5, 92 L. Ed. 436 (1948)). Iowa law permits an officer to make a warrantless arrest "[f]or a public offense committed or attempted in the peace officer's presence." Iowa Code § 804.7(1). The probable cause standard for a warrantless arrest under Iowa law is virtually identical to the federal standard. Under Iowa law, probable cause exists "'if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it.'" *State v. Freeman*, 705 N.W.2d 293, 298 (Iowa 2005) (quoting *State v. Bumpus*, 459 N.W.2d 619, 624 (Iowa 1990)).

Thus, in the present case, in order for Leventhal's arrest to have been valid, Schaffer must have had a reasonable belief that Leventhal was committing a crime, or was about to commit a crime, in his presence. The precise events immediately preceding Leventhal's arrest are in dispute, with Leventhal and Schaffer offering slightly different accounts of the events. Even Grier's description of the events differs slightly with regard to Leventhal's actions. "Where the facts or circumstances surrounding an individual's arrest are disputed, the existence of probable cause is a question for the [trier of fact]." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008) (citing *McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir. 1984)). This is particularly true in a section 1983 action, where "'the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the [trier of fact].'" *Id.* (quoting *McKenzie*, 738 F.2d at 1007-08). Because the parties' accounts of the events surrounding Leventhal's

arrest are in dispute, the defendants' motion for summary judgment should be denied on this issue.[4]

## B. *Excessive Force*

"*[A]ll* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ." *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989). (emphasis by the Court). To support Leventhal's claim that Schaffer used excessive force, he must show an "actual injury." *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005). As Judge Bennett observed in his ruling on the defendants' motion to dismiss, "[a]n actual injury is more than 'de minimus,' . . . but less than 'significant[.]'" Doc. No. 14, p. 17 (citing *Crumley v. City of St. Paul,*, 324 F.3d 1003, 1007 (8th Cir. 2003); *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995)).

Here, Leventhal alleges Schaffer used excessive force by placing him in handcuffs that were too tight, causing him "severe pain" and "strain and pain" in his arms, shoulders, hands, and wrists. However, he has offered no medical records or other objective evidence that he was injured. "[F]or the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries." *Crumley v. City of St. Paul,* 324 F.3d 1003, 1008 (8th Cir. 2003). Judge Bennett held that Leventhal had stated a "plausible" claim of excessive force in his *pro se* Complaint for purposes of surviving a motion to dismiss. Doc. No. 14, p. 18. However, Leventhal carries a greater burden in overcoming summary judgment. He must, "by affidavits or as otherwise provided in [Rule 56], . . . set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Webster Indus*, 320 F. Supp. 2d at 829 (citing,

---

[4]*But see* § IV.C., *infra*.

14

*inter alia*, *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; and *Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997)).

Leventhal has failed to meet his burden to show any genuine issue of material fact exists for trial with regard to his excessive force claim. The defendants' motion for summary judgment should be granted on this claim.

### *C. Qualified Immunity*

The defendants argue that even if the court finds disputed issues of material fact exist with regard to Leventhal's federal claims against Schaffer, Schaffer is entitled to qualified immunity. They argue this is so because Schaffer had probable cause to arrest Leventhal. *See* Doc. No. 23-2, pp. 8-9.

"The question of qualified immunity is one of law for the court." *Engleman v. Deputy Murray*, 546 F.3d 944, 946 (8th Cir. 1008) (citing *Littrell v. Franklin*, 388 F.3d 578, 584 (8th Cir. 2004)). The first inquiry in resolving the defendants' qualified immunity claim is whether Leventhal has alleged a violation of a constitutional right. *See id*; Doc. No. 14, p. 13 (citations omitted). Judge Bennett found that "Leventhal has alleged a violation of a constitutional right, namely his Fourth Amendment right to be free from arrest without probable cause." *Id.*, p. 15 (citing *Habinger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996)).

The next issue is "whether the right was clearly established at the time of the [alleged] violation." *Engleman*, 546 F.3d at 947 (citing *Sherbrooke v. City of Pelican Rapids*, 513 F.3d 809, 813 (8th Cir. 2008)). As the *Engleman* court explained, "'To defeat a claim of qualified immunity, the contours of an alleged constitutional right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Smook v. Minnehaha County*, 457 F.3d 806, 813 (8th Cir. 2006), *cert. denied*, 549 U.S. ___, 127 S. Ct. 1885, 167 L. Ed. 2d 386 (2007) (internal quotation omitted)).

Whether Schaffer's conduct was objectively reasonable is a question of law for the court. *Id.* (citing *Ripson v. Alles*, 21 F.3d 805, 808 (8th Cir. 1994)). If the actions Leventhal alleges Schaffer took are those a reasonable officer could have believed were lawful, then Leventhal's claims against Schaffer should be dismissed. *Id.* However, if Schaffer "'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of [Leventhal],'" then qualified immunity would be defeated. *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S. Ct. 2727, 2737, 73 L. Ed. 2d 396 (1982)).

"To avoid summary judgment based on qualified immunity, [Leventhal] must proffer sufficient evidence to raise a genuine issue of material fact about whether a reasonable officer would have known that [Schaffer's] conduct violated a clearly established right." *Id.* (citing *Hill v. Scott*, 349 F.3d 1068, 1071 (8th Cir. 2003)). Leventhal has failed to meet this burden. Viewing the facts in the light most favorable to Leventhal, the court finds there are no material issues of fact, and Schaffer's "actions were objectively reasonable in light of the law and the information he possessed at the time." *Engleman*, 546 F.3d at 948. *See Pace v. City of Des Moines*, 201 F.3d 1050, 1052 (8th Cir. 2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040, 97 L. Ed. 2d 523 (1987)).

As the court found above, Schaffer reasonably believed Leventhal was committing, or was about to commit, the crime of disorderly conduct. Even if Schaffer's belief was mistaken, the record does not indicate he violated Leventhal's rights knowingly. "'The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law."'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991) (*per curiam*), in turn quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S. Ct. 1092, 1097, 1096, 89 L. Ed. 2d 271 (1986)). *See Engleman*, 546 F.3d at 948 ("'Officials are

not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'") (quoting *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) (internal quotation omitted)).

These authorities demonstrate that Schaffer is entitled to qualified immunity from Leventhal's claims against him in this action. The defendants' motion for summary judgment should be granted.

### D. State Claims

The defendants request summary judgment on Leventhal's state claims against Schaffer and Ritzman in their individual capacities. They note the Iowa Attorney General has certified that both Schaffer and Ritzman were state employees acting within the scope of their employment at all times relevant to this case.[5] *See* Doc. No. 23-4, pp. 75-76.[6] As such, Leventhal's state claims against Schaffer and Ritzman represent claims under the Iowa Tort Claims Act, Iowa Code chapter 669. *See McCabe v. Macaulay*, 551 F. Supp. 2d 771, 785-86 (N.D. Iowa 2007). The Act requires Leventhal to exhaust his administrative remedies before filing a lawsuit. Iowa Code § 669.5(1). To do so, he must allow the attorney general six months from the date of filing his claim to make final disposition of the claim. *Id.* It is undisputed that Leventhal has not filed a claim under the Iowa Tort Claims Act with the state appeal board. As a result, his state law claims against Schaffer and Ritzman should be dismissed. *Id.*

---

[5]Once such a certification has been made, Iowa law provides that the State is substituted as the defendant in place of the employees. *See* Iowa Code § 669.5(2)(a), which provides as follows:

> Upon certification by the attorney general that a defendant in a suit was an employee of the state acting within the scope of the employee's office or employment at the time of the incident upon which the claim is based, the suit commenced upon the claim shall be deemed to be an action against the state under the provisions of this chapter, and if the state is not already a defendant, the state shall be substituted as the defendant in place of the employee.

[6]The Attorney General's certification, dated August 27, 2008, had not been made at the time of the court's January 8, 2008, ruling on the defendants' motion to dismiss.

17

## V. CONCLUSION

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[7] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that the defendants' motion for summary judgment be granted, and that the entire case be dismissed.

**IT IS SO ORDERED.**

**DATED** this 31st day of December, 2008.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[7] Objections must specify the parts of the report and recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72.