**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

WILLIAM EUGENE LEVENTHAL,

        Plaintiff,

vs.

SGT. DANIEL SCHAFFER, LT. JEFF
RITZMAN, and UNKNOWN
EMPLOYEES IN THE IOWA STATE
PATROL, Possibly Additionally
Involved,

        Defendants.

No. C 07-4059-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION**

———————————

**TABLE OF CONTENTS**

*I.* **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.* **LEGAL STANDARDS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    *A. Standards for a Magistrate Judge's Report and Recommendation* . . . . 11
    *B. Standards for Summary Judgment* . . . . . . . . . . . . . . . . . . . . . 16

*III.* **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    *A. Leventhal's Objections to "General Character" of Briefs Section* . . . . 20
    *B. Leventhal's Objections to the Arrest Section and Qualified Immunity* . . 23
        *1. Timing of Leventhal's Arrest* . . . . . . . . . . . . . . . . . . . . . 24
        *2. Probable Cause for Leventhal's Arrest* . . . . . . . . . . . . . . . 27
        *3. Qualified Immunity* . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    *C. Leventhal's Objections to the Excessive Force Section* . . . . . . . . . . 32
    *D. Leventhal's State Law Claims* . . . . . . . . . . . . . . . . . . . . . . . 36

*IV.* **LEVENTHAL'S APPEAL OF ORDER DENYING MOTION TO AMEND** . . 37

*V. LEVENTHAL'S UNTIMELY REQUEST FOR A JURY TRIAL* . . . . . . . . . . 38

*VI. OTHER MISCELLANEOUS ISSUES* . . . . . . . . . . . . . . . . . . . . . . . . . 40

*VII. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

## *I. INTRODUCTION*

### *A. Procedural Background*

Plaintiff William Eugene Leventhal, acting *pro se*, commenced this civil action for damages pursuant to 42 U.S.C. § 1983 and the Iowa Tort Claims Act (ITCA), Iowa Code chapter 669[1] by filing a complaint against defendant Sergeant Daniel Schaffer, defendant Lieutenant Jeff Ritzman, and defendant Unknown Employees of the Iowa State Patrol (collectively, the defendants) on July 27, 2007. Doc. No. 1. Leventhal claims Schaffer violated his federal and state constitutional rights by unlawfully arresting him for disorderly conduct, and using excessive force in doing so, on July 29, 2005, during the Register's Annual Great Bicycle Ride Across Iowa (RAGBRAI). Leventhal claims Ritzman, as well as possibly other unknown employees of the Iowa State Patrol, condoned and endorsed defendant Schaffer's alleged illegal actions. Leventhal sues the defendants in their official and individual capacities, alleges damages in the amount of $63,000, and requests attorney fees under 42 U.S.C. § 1988. Leventhal supplemented his complaint on August 24, 2007, to correct two typographical errors.

---

[1] Leventhal's complaint appeared to reference the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*, but the defendants and court addressed the claims under the Iowa Tort Claims Act, as the allegations involved state, not federal, employees, and dismissed any claims against the defendants based on the Federal Tort Claims Act. Doc. No. 14.

On September 27, 2007, the defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which Leventhal resisted. The undersigned granted the motion in part and denied it in part, leaving Leventhal with a § 1983 claim[2] against Schaffer in his individual capacity and the ITCA claims against the defendants in their individual capacities—all other claims were dismissed. Doc. No. 14.

The defendants filed their Motion for Summary Judgment on August 29, 2008. Doc. No. 23. The undersigned referred the case to Chief United States Magistrate Judge Paul A. Zoss for a report and recommendation. On December 31, 2008, Judge Zoss issued a report and recommendation, which recommends that this court grant the defendants' motion and dismiss the entire case. Judge Zoss gave the parties ten days, from the date of service of the report and recommendation, to file objections. As noted by Judge Zoss, the ten day time limit is found in 28 U.S.C. § 636 ("Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.") and the Federal Rule of Civil Procedure 72 (b)(2) ("Objections. Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 10 days after being served with a copy."). Leventhal sent his *pro se* objections on January 16, 2009, and they were filed on January 20, 2009. Because of Leventhal's *pro se* status, the court will consider his objections as timely filed. The defendants did not file any objections to the report and recommendation.

---

[2] Leventhal's § 1983 claim encompasses both the alleged unlawful arrest and alleged use of excessive force claims, discussed below.

On January 20, 2009, Leventhal also filed a motion to amend his complaint. *See* Doc. Nos. 46 and 48. The following day, Judge Zoss denied the motion. On January 23, 2009, Leventhal filed an appeal of Judge Zoss's decision to deny the motion, with this court, which is dealt with below.

On March 9, 2009, Leventhal filed an untimely demand for a jury trial. Doc. No. 54. The defendants moved to strike the demand on March 11, 2009. Doc. No. 55. The case is scheduled for a bench trial on May 11, 2009.

### B. Factual Background

Judge Zoss made the following factual findings in his report and recommendation:

> On July 28, 2005, Leventhal was participating in RAGBRAI. During a stop on the RAGBRAI route, at a bar, Leventhal had a brief but heated confrontation with a "Bill," who was participating in RAGBRAI as a member of Team Bad Boys. The confrontation arose from an obscene statement Bill had made to Leventhal some years earlier, and from an incident earlier on June 28, 2005, when Bill and two other men from Team Bad Boys threw ice water on Leventhal while he was taking a nap. Leventhal confronted Bill at the bar for the purpose of telling Bill to stop harassing him. The conversation lasted less than a minute before Leventhal and Bill were on the verge of coming to blows, and an employee at the bar stepped between the two men and asked Leventhal to leave. Leventhal complied and left the bar. He then stood outside the bar and yelled for Bill to come outside and apologize, or finish their confrontation. Leventhal admitted he probably used profanity when he was yelling for Bill to come

outside. The entire incident only lasted a couple of minutes. *See* Leventhal Depo., Doc. No. 23-4, pp. 4-13, 20.[3]

Following the confrontation, Leventhal approached Iowa State Patrol officer Jonah Grier, and told him about the incident and the background that led to the confrontation. Another Trooper, Mikel Yauk, was present for a portion of Leventhal's conversation with Grier. Grier agreed to wait with Leventhal for Bill and the other members of Team Bad Boys so they could all talk and try to resolve the matter. However, when Team Bad Boys had not arrived after some time, Leventhal got tired of waiting and left the area. *Id.*, pp. 14-16.

The next day, July 29, 2005, Leventhal learned that the members of Team Bad Boys were in another bar on the RAGBRAI route in or near Provotin, Iowa. He went by the bar and saw the bikes owned by members of Team Bad Boys. He then approached the defendant Schaffer, who was on duty with the Iowa State Patrol to provide security for RAGBRAI. Schaffer was parked by the side of the road a few miles outside of Provotin. Leventhal told Schaffer about the previous day's confrontation with Team Bad Boys, and asked Schaffer to talk with Team Bad Boys and see if he could get the harassment of Leventhal to stop. According to Leventhal, Schaffer told him that even if Bill or someone else put their hands on him or took a swing at him, under Iowa law he could not defend himself; he would have to walk away or he could be arrested. *Id.*, p. 18. Leventhal responded that if someone put their hands on him, he was going to defend himself. As Leventhal was talking with Schaffer, he used some profanity, but he did not direct any profanity at Schaffer. *Id.*, p. 20. According to Leventhal, Schaffer cut him off before he could finish telling

---

[3] Page numbers cited in this opinion are to the court's ECF pagination, not to the parties' pagination of their respective appendices.

Schaffer everything that happened. Schaffer stated he was "the law out here," and he would do what was necessary to end the harassment. Schaffer then left the area. *Id.*, pp. 18-19.

Leventhal had a second conversation with Schaffer later on the 29th, in Spillville, Iowa. Leventhal was talking with a couple and their children when Officer Grier approached him and stated Schaffer wanted to talk with him. Grier pointed out Schaffer's location, which was "30 to 50 yards," or approximately a block, from where Leventhal was sitting. *Id.*, pp. 20-21. Schaffer was sitting in the driver's seat of his vehicle. As Leventhal approached the vehicle, Schaffer said something that Leventhal could not hear well. Schaffer rolled his window down halfway, and Leventhal had to get very close to the vehicle in order to hear Schaffer. *Id.* at 22. Schaffer indicated he had talked to the members of Team Bad Boys, who maintained Leventhal was "the bad guy." *Id.*, p. 23. According to Leventhal, Schaffer stated, "[Y]ou didn't tell me that you were the one asked to leave the bar, and the victim is not the one who's usually asked to leave the bar. You didn't tell me that." *Id.*, pp. 22-23. Leventhal responded that Schaffer had stopped him before he had a chance to finish his account of the incident, and he told Schaffer not to call him a liar. It upset Leventhal that Schaffer appeared to be calling him a liar, and appeared to be taking the side of the members of Team Bad Boys. *Id.*, p. 23.

Leventhal acknowledges he may have raised his voice "slightly," and Schaffer instructed Leventhal not to raise his voice. *Id.* Leventhal testified the following events then took place[4]:

---

[4] When discussing qualified immunity, below, the court provides a more extensive excerpt from Leventhal's deposition.

Q    [By Mr. Terrones, for the defendants] Then
what did you do?

A    [By Leventhal]  I didn't do anything.  He said –
I – Oh, no.  I said – I said no, I think I can raise
my voice to you.  And then he said you're under
arrest.    And I said under arrest for what?
Raising my voice?
As he started to get out of the car, he said you're under
arrest.  I think you're a threat to me.  And I had to back
up as the door was coming open – as the door was
coming open – And I think that's exactly what I said
because it's exactly what happened.

I had to back up as the door was coming open, and he
– And I – and I said, oh, you're so sensitive nobody can
raise their voice to you?  Pretty much in a tone like that.
And then he got out of the car, and very quickly I was
arrested.  *Id.*

Schaffer got out of his car, and he and Leventhal
continued to discuss matters.  Leventhal testified that "for
emphasis" he "might have used [his] finger," but "[i]t was not
anywhere near [Schaffer's] face."  *Id.*  He then said he did not
"intentionally" put his finger near Schaffer's face, and "it
certainly wasn't within an inch of his face or six inches of his
face."  *Id.*, pp. 23-24.  Leventhal did not recall using any
profanity in this encounter prior to the time Schaffer got out of
his car.  *Id.*, p. 24.  At first, he thought Schaffer was kidding
when he stated Leventhal was under arrest.  Leventhal did not
see how he could be a threat to Schaffer when Schaffer was in
the car, with "two guys behind him and he's six foot six," and
Leventhal was not armed.  *Id.*  When he realized Schaffer was
serious about arresting him, he may have used profanity.  *Id.*

Schaffer arrested Leventhal on a charge of disorderly
conduct.  He handcuffed Leventhal and placed him in the front

seat of Schaffer's patrol car. Leventhal complained to Schaffer that the handcuffs were too tight and were causing him pain, and he asked Schaffer repeatedly to loosen the handcuffs, but Schaffer did not do so. Instead, Schaffer checked the handcuffs, and demonstrated that he could place two fingers between the cuffs and Leventhal's skin. Schaffer drove Leventhal to Decorah, Iowa, where Leventhal was booked. Leventhal posted bail and was released later that day. The disorderly conduct charge eventually was dismissed pursuant to a deferred prosecution agreement. Leventhal filed an administrative complaint against Schaffer. The complaint was investigated by Ritzman, who found no wrongdoing in Schaffer's conduct.

At Schaffer's deposition, he testified he first became concerned about Leventhal's behavior when Leventhal approached him the day before, near Provotin. He stated Leventhal initially seemed to be directing his anger towards Schaffer, and Schaffer believed the situation was escalating. As they talked, Leventhal eventually calmed down, but Schaffer stated if the situation had continued unabated, he was prepared to arrest [Leventhal] at that time. *Id.*, pp. 33-34. The next day, at the time of the encounter leading to Leventhal's arrest, Schaffer recalled "very clearly . . . looking at a man [Leventhal] that appeared to become immediately enraged and I remember him yelling 'don't f'ing call me a liar.'" Doc. No. 31-6, p. 20. Schaffer got out of his vehicle because he felt Leventhal potentially could be a threat to him, and he "did not want to be immobilized in [his] vehicle should an altercation occur." *Id.*, p. 26. He thought Leventhal was a potential threat to his safety because Leventhal was "so enraged." *Id.*, p. 29. Although Schaffer agreed Leventhal did not make any aggressive movements toward him while he was in the car, Schaffer believed Leventhal's "facial expression . . . appeared as though [he was] becoming incensed and enraged." *Id.*, pp. 27-28. He testified that in his experience, people who "are unable to control their emotions become . .

. combative, often become flush in the face, they're pensive, their body will tremble with anger, and [Schaffer has] seen that any number of times before assaults have occurred." *Id.*, p. 28.

As Schaffer got out of his vehicle, Leventhal continued to talk, but he did not attempt to make physical contact with Schaffer. *Id.*, p. 30. At the moment Schaffer got out of his vehicle, he did not believe Leventhal "had met any elements of a crime, meaning an arrest situation." *Id.*, p. 31. However, shortly thereafter, Leventhal raised his finger and pointed it at Schaffer as Leventhal "lunged" in his direction. *Id.*, p. 30. Schaffer remembers Leventhal's finger "coming directly towards [his] nose," and it was "very" close to his nose. *Id.* Schaffer indicated Leventhal appeared not to be in control of his emotions at that point and he was acting irrationally. *Id.*, p. 31. Schaffer testified Leventhal made comments like, "Go ahead and arrest me. You don't intimidate me, go ahead, f'ing arrest me," as Leventhal was moving quickly toward Schaffer "in a very quick and aggressive manner," with his finger approaching Schaffer's face. *Id.*, p. 34. Schaffer recalled grabbing Leventhal's hand as it approached his face, and maintaining control of Leventhal's wrist as he turned Leventhal to escort him to the patrol car. *Id.*, p. 35.

On the issue of the handcuffs, Schaffer recalled Leventhal complaining that the handcuffs were too tight, and Schaffer checked to be sure he could put two fingers underneath the cuffs. *Id.*, P. 37.

Officer Jonah Grier was present at the scene at the time of Leventhal's arrest. He testified during his deposition that he saw Leventhal talking with Schaffer while Schaffer was still in his patrol car, but the conversation was not loud enough for him to hear what was being said from his vantage point thirty to forty feet away. Doc. No. 23-6, p. 53. He saw Schaffer

get out of his patrol car, and agreed that Leventhal had to back up in order to allow the door to open. Leventhal and Schaffer continued to talk, and shortly thereafter, Leventhal raised his voice and "became a little bit more upset." *Id.*, p. 54. Grier approached the two because he felt Leventhal "may become assaultive or may have been a situation brewing." *Id.* Grier observed Leventhal begin pointing his finger at Schaffer in what appeared "to be an aggressive manner." *Id.*, p. 57. Grier observed Schaffer place Leventhal under arrest and put handcuffs on him. He heard Leventhal complain that the handcuffs were too tight, and he observed as Schaffer checked to be sure the cuffs were not too tight. *Id.*, p. 59. He watched Schaffer put Leventhal into the patrol car, and Grier took custody of Leventhal's bike. *Id.*, pp. 63-64.

In Leventhal's Complaint, he alleges Schaffer assaulted him and used undue and unnecessary force in effecting his arrest; Schaffer filed an incomplete and false report regarding the incident; Schaffer handcuffed him so tightly, it caused Leventhal to suffer severe pain in his hands, wrists, arms, and shoulders; and Schaffer intentionally inflicted emotional and physical distress on Leventhal. Leventhal claims Ritzman was biased in his investigation of Leventhal's administrative claim against Schaffer, causing Ritzman to condone or endorse Schaffer's allegedly illegal acts, and Ritzman abused his authority both in the investigation and in refusing to give Leventhal information from the investigation.

At Leventhal's deposition, he testified he had talked with a chiropractor about "various problems" including "spasms" in his wrists, but he has not seen any medical provider for diagnostic testing or treatment of his wrists. *Id.*, p 27. Leventhal has not described any other type of assaultive conduct by Schaffer other than his claim that the handcuffs were too tight.

Doc. No. 45.  Upon a complete review of the record, the court adopts these factual findings and also reproduces additional excerpts from Leventhal's deposition, below.

## II.  LEGAL STANDARDS

### A.  Standards for a Magistrate Judge's Report and Recommendation

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation).  While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).  Thus, a district court *may* review *de novo* any issue in a magistrate judge's report and recommendation at any time.  *Id.*  If a party files an objection to the magistrate judge's report and recommendation, however, the district

court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's *required de novo* review is limited to "*de novo* determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a

magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, this court will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). The court is unaware of any case that has described the clearly erroneous standard

13

of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the court believes one further caveat is necessary: a district court always remains free to render its own decision under *de novo* review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a

clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.[5]

---

[5] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed *de novo*, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and
(continued...)

## B. Standards for Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Any party may move for summary judgment regarding "all or any part" of the claims asserted in a case. FED R. CIV. P. 56(a), (b) (allowing a claimant to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party," and allowing a defending party to move for summary judgment "at any time"). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify

---

[5](...continued)
recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

which facts are material." *Anderson*, 477 U.S. at 248. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.* An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence"). Evidence presented by the nonmoving party that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, such as a "scintilla of evidence," *Anderson*, 477 U.S. at 252; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997), or evidence that is "merely colorable" or "not significantly probative," *Anderson* at 249-50, does not make an issue of material fact genuine.

Thus, a *genuine issue of material fact* is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 985 (8th Cir. 2004). "'Instead, "the dispute must be outcome determinative under prevailing law."'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992), in turn quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989)). In other words, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a determination of "whether a proper jury question [is] presented." *Id.* at 249. A proper jury question is present if "there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Procedurally, the moving party does not have to "support its motion with affidavits or other similar materials *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, but the moving party does bear "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Thus, a movant need only demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). Thus, the movant must show the absence of a genuine issue of material fact as it relates to the substantive law, and the nonmovant must show the alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 322; *In re Temporomandibular Joint*, 113 F.3d at 1492.

In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88. However, "because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather than "attempt[ing] to determine the truth of the matter . . . the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

Of course, the facts are not the sole concern of the court; after all, a genuine issue of material fact necessarily depends on the substantive law. *See Holloway*, 884 F.2d at 366 ("The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."). Thus, the relevant law concerning plaintiff's claims is pivotal. *Anderson*, 477 U.S. at 252 ("[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."); *see Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998) ("'In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law.'" (quoting *Hartnagel*, 953 F.2d at 396)). Even if no genuine issue of material fact is present, summary judgment is not appropriate unless the governing law supports the moving party's position. FED. R. CIV. P. 56(c) (requiring the moving party to show that it "is entitled to judgment as a matter of

law"). Moreover, summary judgement is particularly appropriate "where the unresolved issues are primarily legal rather than factual." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996).

## III.  LEGAL ANALYSIS

Leventhal has several objections to Judge Zoss's report and recommendation. First, Leventhal objects to parts of Judge Zoss's discussion of the "general character of the parties' briefs." Doc. No. 47. Although the objections do not factor into the discussion of the claims before the court, Leventhal raises issues that are understandably important to a *pro se* plaintiff and the court will address these objections. Next, the court will address Leventhal's objections in relation to his § 1983 claim: First, the court will review, *de novo*, the lawfulness of Leventhal's arrest and whether Schaffer is entitled to qualified immunity in relation to the arrest. *See Hudson*, 46 F.3d at 786. Second, the court will review, also *de novo*, Leventhal's excessive force claim. *Id.* Leventhal does not object to Judge Zoss's findings regarding the ITCA, and, as a result, the court will review Judge Zoss's findings regarding the ITCA under a clearly erroneous standard of review. *See Grinder*, 73 F.3d at 795.

### A.  Leventhal's Objections to "General Character" of Briefs Section

First, Leventhal objects to "the comment by Judge Zoss that [Leventhal] provided unrelated documents that were not of any relation to the case[.]" Doc. No. 47. Leventhal explains that the documents, which relate to Leventhal's civil rights background and evidence his "training in dealing with threats and harassment" and his sensitivity to harassment, were "pertinent as to [his] motivation and background for taking the actions [he] did when [he] was harassed and threatened by drunks." *Id.* Judge Zoss explained

these documents as "dozens of pages of personal endorsements from friends and colleagues, and documents regarding his personal history." Doc. No. 45. Judge Zoss found that the documents were "inappropriate, and completely irrelevant to the case at bar." *Id.*

Upon reviewing the documents at issue, the court understands why Leventhal offered them as exhibits. The defendants have asserted that Leventhal became excited after he was allegedly harassed by some members of Team Bad Boys. Leventhal also acknowledges that he may have raised his voice when talking to Schaffer. Therefore, Leventhal might believe that the documents are important to show that his response to the harassment was: 1) reasonable considering his history with harassment as a civil rights worker and 2) an aberration when taking into account his reputation, as explained by his friends and colleagues. Leventhal might believe, in other words, that the reasons for his behavior mitigate against his culpability in relation to the accusation that he committed disorderly conduct.

Judge Zoss understands, however, that Leventhal's motivation for responding to the alleged harassment is not at issue. Considering the issues before the court, the exhibits are potentially relevant only to the arrest issue. Leventhal was arrested for allegedly violating Iowa's disorderly conduct statute, Iowa Code § 723.4. Schaffer arrested Leventhal for allegedly violating section 3 of this statute, which states:

> A person commits a simple misdemeanor when the person does any of the following: 3. Directs abusive epithets or makes any threatening gesture which the person knows or reasonably should know is likely to provoke a violent reaction by another.

IOWA CODE § 723.4. This charge was dismissed, and what is at issue is not whether Leventhal actually violated the statute, but instead, whether Schaffer's warrentless arrest violated the Fourth Amendment of the United States Constitution. *See Stufflebeam v.*

*Harris*, 521 F.3d 884, 886 (8th Cir. 2008)("A warrantless arrest without probable cause violates the Fourth Amendment as applied to state actors by the Fourteenth Amendment.").

The defendants claim that Schaffer had such probable cause to arrest Leventhal, and therefore Leventhal's exhibits must relate to whether Schaffer had probable cause in order for them to be appropriate for the court's consideration, in this particular case. In order to assess probable cause, the court looks at whether "the facts and circumstances within [the arresting officer's] knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing… that the suspect has committed, is committing, or is about to commit an offense under state law." *Id.* (internal quotation marks and citations omitted). The court will only look at evidence relevant to this determination—relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. of Evid. R. 401, 28 U.S.C.A. There is no indication that Schaffer was aware of the above-referenced evidence at the time of Leventhal's arrest, and even if Schaffer was aware of the evidence, the court fails to see how the evidence would make the existence of probable cause to arrest Leventhal more or less probable.[6] The court will more thoroughly consider whether there is a genuine issue

---

[6] Leventhal might argue that had Schaffer obtained some of this information from Leventhal prior to his arrest, Schaffer would have understood Leventhal's behavior and decided not to arrest him. However, Schaffer would have needed to conduct a "mini-trial" before arresting Leventhal in order to obtain this information. *See Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008) (Officers are not required to conduct a "mini-trial" before arrest, but probable cause "does not exist when a 'minimal further investigation' would have exonerated the suspect."(citations omitted)). In addition, the court does not find that it would have impacted the existence, or non-existence, of probable cause had it been discovered before the arrest.

of material fact concerning whether Schaffer had probable cause to arrest Leventhal, below.

In Leventhal's second objection, however, he claims that the evidence at issue was offered to *defend* his character and personal history. The court recognizes, as Judge Zoss did, that the defendants' brief attacked Leventhal's character. For example, the defendants claim that "Leventhal is obviously a person who gets emotional about things and has a problem controlling his behavior." Doc. No. 23-2. The defendants also state, as the topic sentence for their sole conclusory paragraph, "Willy Leventhal has, apparently, been angrily provoking people for decades." *Id.* Even if the defendants thought that the court would view these statements as relevant to establish Leventhal's actual behavior, the court is reviewing a motion for summary judgment and views the evidence in the light most favorable to the non-moving party. *See Woods*, 409 F.3d at 990. Nevertheless, Leventhal apparently, and understandably considering his *pro se* status, submitted evidence to rebut the character attacks. Regardless of which party initiated this strife, the evidence Leventhal offered concerning his personal history and the personal endorsements, though understandably important for a *pro se* plaintiff to offer under the circumstances, is not relevant to the claims remaining in this lawsuit. So far as Leventhal's objections argue that the evidence at issue is relevant to any remaining claim, the objections are overruled.

### B. *Leventhal's Objections to the Arrest Section and Qualified Immunity*

Judge Zoss found that there was a genuine issue of material fact concerning whether Schaffer had probable cause to arrest Leventhal. However, Judge Zoss also found that Leventhal's § 1983 claim, relating to the arrest, should be dismissed because Schaffer is entitled to qualified immunity. Leventhal objects to these findings and argues that there is "a mid-west District Court, ruling that citizens do have the right to argue with police and

23

cannot be arrested just for a verbal dispute as Schaffer did arrest me BEFORE he got out of the car." Doc. No. 47. Leventhal also argues that Schaffer did not have probable cause to arrest Leventhal because he only used his finger to emphasize his verbal argument, would not have had his finger close to Schaffer because of the one foot height differential, and that Leventhal was not enraged, as evidenced by his allowing Schaffer to handcuff him. *Id.* The defendants claim that Schaffer had probable cause to arrest Leventhal because he had previously been ejected from a bar due to a confrontation with another patron, he was becoming loud, angry and profane, and he did not calm down once Schaffer exited his car and approached him. Regardless of whether Schaffer had probable cause to arrest Leventhal for disorderly conduct or some other offense, Schaffer claims that he is entitled to qualified immunity.

### 1.  *Timing of Leventhal's Arrest*

First, the court will turn to the parties' dispute concerning *when* the arrest occurred—the parties dispute when Leventhal was "seized." *See California v. Hodari D.*, 499 U.S. 621, 624 (1991) ("We have long understood that the Fourth Amendment's protection against 'unreasonable … seizures' includes seizure of the person.")  "A 'seizure' occurs only when a citizen is physically touched by law enforcement officers or when he otherwise submits to a show of authority by the officers." *Schulz v. Long*, 44 F.3d 643 (8th Cir. 1995) (citing *Hodari D.*, 499 U.S. at 626).  However, "[a]n assertion of authority by a law enforcement officer without a corresponding submission by the citizen does not constitute a seizure within the meaning of the Fourth Amendment." *Id.* Clearly, a person is seized "when there is a governmental termination of freedom of movement *through means intentionally applied*." *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (original emphasis).  "A police officer may make a seizure by a

show of authority and without the use of physical force…" *Brendlin v. California*, 127 S.Ct. 2400, 2405 (2007).

According to Judge Zoss's factual background section in his report and recommendation, which has been adopted by this court, the following occurred directly preceding Leventhal's arrest:

> Leventhal was talking with a couple and their children when Officer Grier approached him and stated Schaffer wanted to talk with him. Grier pointed out Schaffer's location, which was "30 to 50 yards," or approximately a block, from where Leventhal was sitting. *Id.*, pp. 20-21. Schaffer was sitting in the driver's seat of his vehicle. As Leventhal approached the vehicle, Schaffer said something that Leventhal could not hear well. Schaffer rolled his window down halfway, and Leventhal had to get very close to the vehicle in order to hear Schaffer. *Id.* at 22. Schaffer indicated he had talked to the members of Team Bad Boys, who maintained Leventhal was "the bad guy." *Id.*, p. 23. According to Leventhal, Schaffer stated, "[Y]ou didn't tell me that you were the one asked to leave the bar, and the victim is not the one who's usually asked to leave the bar. You didn't tell me that." *Id.*, pp. 22-23. Leventhal responded that Schaffer had stopped him before he had a chance to finish his account of the incident, and he told Schaffer not to call him a liar. It upset Leventhal that Schaffer appeared to be calling him a liar, and appeared to be taking the side of the members of Team Bad Boys. *Id.*, p. 23.
>
> Leventhal acknowledges he may have raised his voice "slightly," and Schaffer instructed Leventhal not to raise his voice. *Id.* Leventhal testified the following events then took place:
>
> Q    [By Mr. Terrones, for the defendants] Then what did you do?

> A      [By Leventhal] I didn't do anything.  He said – I – Oh, no.  I said – I said no, I think I can raise my voice to you.  And then he said you're under arrest.  And I said under arrest for what?  Raising my voice?
>
> As he started to get out of the car, he said you're under arrest.  I think you're a threat to me.  And I had to back up as the door was coming open – as the door was coming open – And I think that's exactly what I said because it's exactly what happened.
>
> I had to back up as the door was coming open, and he – And I – and I said, oh, you're so sensitive nobody can raise their voice to you?  Pretty much in a tone like that.  And then he got out of the car, and very quickly I was arrested.  *Id.*
>
> Schaffer got out of his car, and he and Leventhal continued to discuss matters.  Leventhal testified that "for emphasis" he "might have used [his] finger," but "[i]t was not anywhere near [Schaffer's] face."  *Id.*

Doc. No. 45.

Viewing the evidence in the light most favorable to Leventhal, the court finds that Schaffer told Leventhal that he was under arrest while he was getting out of his car.  Although Leventhal believed Schaffer might have been joking, Leventhal did not flee once he was told that he was under arrest.  Instead, Leventhal submitted to Schaffer's show of authority.  Because the court finds, for purposes of this Order, that Leventhal was seized while Schaffer was exiting his car, the court will not consider the events that occurred after Schaffer exited his car when: 1) evaluating whether there is a genuine issue of material fact concerning whether Schaffer had probable cause to arrest Leventhal and 2) when considering whether Schaffer is entitled to qualified immunity.

## 2. *Probable Cause for Leventhal's Arrest*

Schaffer claims that he had probable cause to arrest Leventhal for disorderly conduct, in violation of Iowa Code § 723.4(3) or, if not for that offense, for some other offense. The Eighth Circuit Court of Appeals recently explained the following regarding the probable cause requirement:

> A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause. *See U.S. Const. amend. IV*; *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Probable cause exists when the totality of the circumstances shows that a prudent person would believe that the arrestee has committed a crime. *See Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Washington*, 109 F.3d 459, 465 (8th Cir.1997). Exculpatory evidence is therefore relevant to whether an officer has probable cause. *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir.1999). Officers are not required to conduct a "mini-trial" before arrest, but probable cause "does not exist when a 'minimal further investigation' would have exonerated the suspect." *Id.* at 650 (citations omitted).

*Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *United States v. Quiroga*, 554 F.3d 1150 (8th Cir. 2009) (citing *United States v. Torres-Lona*, 491 F.3d 750, 755 (8th Cir.2007)). The disorderly conduct statute prohibits, among other things, "[d]irect[ing] abusive epithets or mak[ing] any threatening gesture which the person knows or reasonably should know is likely to provoke a violent reaction by another." IOWA CODE § 723.4(3).

The parties have presented evidence of, through depositions, differing accounts of the events preceding Leventhal's arrest. Leventhal claims that, once he approached

Schaffer's car, Schaffer called him a liar.  In response to this alleged accusation, Leventhal admits that he raised his voice and told Schaffer not to call him a liar.  Leventhal then claims that Schaffer told Leventhal that he was under arrest as Schaffer exited his vehicle[7]. Schaffer, however, claims that Leventhal was arrested after Leventhal "became agitated, angry and loud and invaded Schaffer's space by pointing his finger at Schaffer's face." Doc. No. 23-2.  Only after this more aggressive behavior does Schaffer claim that he arrested Leventhal.  Schaffer also points out that Leventhal had been recently kicked out of a bar due to an altercation.

The court views the evidence in the light most favorable to the non-moving party but, in this case, finds that either account of what occurred preceding the arrest provides sufficient probable cause for a fact finder to find in favor of Leventhal.  In other words, under both parties' version of the events leading up to Leventhal's arrest, the court does not find that the defendants are entitled to a finding that Schaffer had probable cause to arrest Leventhal as a matter of law.  The court finds that the issue of whether Schaffer had probable cause to arrest Leventhal is a proper question for the fact finder, as Judge Zoss did, and therefore the court will not grant defendants' motion insofar as it asks the court to find Schaffer had probable cause, as a matter of law, to arrest Leventhal.

### 3.     *Qualified Immunity*

Notwithstanding the court's finding that there was not, as a matter of law, probable cause to arrest Leventhal, his § 1983 claim will be dismissed if Schaffer is entitled to qualified immunity.  *See Murphy v. State of Ark.*, 127 F.3d 750, 755 (8th Cir. 1997). "Qualified immunity protects public officials from § 1983 damage actions if 'their conduct

---

[7]   In the previous section, the court found that Schaffer seized Leventhal as Schaffer was exiting his car—when viewing the evidence in the light most favorable to the non-moving party.

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Officers may… be entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable." *Amrine*, 522 F.3d at 832 (citations omitted). The Eighth Circuit Court of Appeals has "characterized this inquiry as whether the officers had 'arguable probable cause.'" *Id.* (citing *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir.2000)).

In this court's Memorandum Opinion and Order Regarding Defendants' Motion to Dismiss, the court more specifically explained the two-step analysis the court must undertake to determine whether Schaffer is entitled to qualified immunity. *See* Doc. No. 14 (quoting *Weaver v. Clark*, 45 F.3d 1253, 1255 (8th Cir. 1995). The court found that Leventhal established the first step, that he has "alleged the violation of a constitutional right." Doc. No. 14 (quoting *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997)). Leventhal had alleged, and still alleges, a violation of his Fourth Amendment right to be free from arrest without probable cause. *See Habinger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996).

The court, however, did not resolve the second step for purposes of this motion for summary judgment. The second step requires the court to decide "whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation." *Whisman*, 199 F.3d at 1309. The court decided the first part of the second step, that Leventhal's right to be free from seizure without probable cause was clearly established. However, the court could not determine on the pleadings whether defendants acted objectively reasonable. The court also noted that "[q]ualified immunity is usually raised in a motion for summary judgment after a

limited amount of discovery…." *Id.* The Eighth Circuit Court of Appeals has explained that "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Pace v. City of Des Moines*, 201 F.3d 1050, 1052 (8th Cir. 2000) (citations and quotation marks omitted).

Although the above factual background section provides the court's factual findings for this motion for summary judgment, the court finds it appropriate to provide a more complete excerpt from Leventhal's deposition before applying the less than rigorous qualified immunity standards found in cases such as *Pace*[8]. *See id.* In his deposition, Leventhal explains what initiated his conversation with Schaffer and then states:

> But it very quickly came to the point of what the--what he wanted to talk to me about was that he had talked to the Bad Boys. And he made it very much a point to say that he talked to the Bad Boys and that they had told him a different story and that I had been the--basically the bad guy.
>
> And I--And he went out of his way to say you didn't tell me that you were the one asked to leave the bar, and the victim is not the one who's usually asked to leave the bar. You didn't tell me that.
>
> And I said you didn't give me a chance to tell you that, and don't call me a liar.
> …
> … I first said you didn't give me a chance to tell you. I would have told you, but you--you didn't want to hear anymore.
> …

---

[8] The court primarily includes only Leventhal's responses from his deposition, as the questions do not provide additional insight into his explanation of the relevant events.

I said don't call me a liar. I said you're taking their side. You're believing the--the people that are--You know, they've--they've apparently lied to you. And don't call me a liar.

…

It upset me more that he was calling me a liar.

…

It was a de facto liar. He was believing them over me, which means that I was lying.

…

Either a…lie by omissions or a lie by commission. He was accusing me of that. Absolutely. I raised by voice, I said don't call me a liar. And he said--Want to know what he said?

…

He said don't raise your voice to me.

…

[I had raised my voice] [s]lightly.

…

I didn't do anything. He said--I--Oh, no. I said no, I think I can raise my voice to you. And then he said you're under arrest. And I said under arrest for what? Raising my voice?

As he started to get out of the car, he said you're under arrest. I think you're a threat to me. And I had to back up as the door was coming open--as the door was coming open--And I think that's exactly what I said because it's exactly what happened.

I had to back up as the door was coming open, and he--And I--and I said, oh, you're so sensitive nobody can raise their voice to you? Pretty much in a tone like that. And then he got out of the car, and very quickly I was arrested.

Doc. No. 24-1, pp. 20-21.

The court considers Leventhal's deposition when looking at the evidence in the light most favorable to Leventhal. With the deposition in mind, the court finds that a genuine issue of material fact is also present concerning whether Schaffer is entitled to qualified

immunity. The court must find that Schaffer acted in an objectively reasonable manner, *see Amrine*, 522 F.3d at 832, and the court finds that Schaffer's actions, as explained by Leventhal, are not objectively reasonable as a matter of law. According to Leventhal, Schaffer arrested Leventhal for raising his voice, slightly, in response to accusations that he was not telling Schaffer the complete story about his contact with Team Bad Boys. Leventhal admits that he was close to Schaffer's door but claims that Schaffer had summoned Leventhal over to his car and Leventhal had simply complied. Schaffer disputes when Leventhal was arrested and what preceded the arrest once Schaffer exited his car. Because the court finds that the evidence shows a genuine issue of material fact concerning whether Schaffer is entitled to qualified immunity, the court finds that defendants' motion for summary judgment should be denied as to the qualified immunity issue. Therefore, the court's *de novo* review of whether to dismiss Leventhal's § 1983 claim regarding his alleged unlawful arrest yields a different result than Judge Zoss's report and recommendation.

### C. Leventhal's Objections to the Excessive Force Section

Judge Zoss found that there was no genuine issue of material fact regarding whether Schaffer used excessive force to arrest Leventhal and recommends dismissal of the claim. *See* Doc. No. 45. Judge Zoss found that Leventhal had "offered no medical records or other objective evidence that he was injured." *Id.* Leventhal objects to Judge Zoss's finding that defendant's motion for summary judgment should be granted on this issue.

"[A]ll claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Eighth Circuit Court of Appeals has explained

that a "violation of this right will, of course, support a § 1983 action." *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003). The court has noted, however, that, "not every push or shove violates the Fourth Amendment." *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998) (*citing Graham*, 490 U.S. at 396). Instead, "the force employed by an officer is not excessive and thus not violative of the Fourth Amendment if it was 'objectively reasonable under the particular circumstances.'" *Id.* (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir.1994)). "An 'actual injury' must be shown to support an excessive force claim under the Fourth Amendment." *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005) (citing *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995)). "For the application of handcuffs to amount to excessive force, there must be something beyond minor injuries." *Id.* (citing *Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003)).

In this court's Memorandum Opinion and Order Regarding Defendants' Motion to Dismiss, the court preserved Leventhal's § 1983 claim of alleged excessive force. The court reasoned that, considering Leventhal's *pro se* status, the complaint asserted a "'plausible' claim of excessive force to survive the defendants' motion to dismiss." Doc. No. 14 (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1977 (2007)). The court now re-evaluates the claim, under summary judgment standards, and with the aid of additional evidence the parties obtained through discovery and provided to the court.

In Leventhal's deposition, he explains why he thought the force Schaffer used to arrest him was excessive:

> I think what I said in my complaint is that the cuffs were put on so tight that--and I was made to sit on them on the way to Decorah in the front seat--that it caused--It was very painful to my wrists, particularly my shoulders, and--and it caused some spasms in my shoulders and in my hands.

I've since had a shoulder injury, which is--I'm sure its not a very strong--But probably the--the most painful thing that happened right after it were these--I get these--seems to have some sort of nerve issue with my hand that's happening after that. It just kind of spasms.

…

I am alleging [the handcuffs] were too tight.

[Leventhal is asked:] Do you recall Sergeant Schaffer putting two fingers inside of the handcuffs? Yes or no.

I remember he did that, and--and--and on the lower part of your wrist there (indicating) when they would slide up the bone up there (indicating), you can't get any fingers in.

When he pushed them down here (indicating), he could get two fingers. When they slid up, when he had them behind my back and lifted my arms up and when he put me in the front seat, then they rode up on my arm up to the bone up here (indicating), and that's when they were painful.

So if you slide them down, you can put the two fingers under. And then you push them back up and they hurt.

Doc. No. 23-4, p. 24.

In support of his alleged injuries, Leventhal attaches to his objections to Judge Zoss's report and recommendation, a record from Murphy Chiropractic Clinic and argues:

The four visits in the 6 weeks after [RAGBRAI] in 8/05 and 9/05, show complaints and treatment for upper back and [neck] soreness, which is consistent to the strain on my upper back and shoulders and neck from having to sit on the hands in cuffs for 20 or so minutes in the ride from Spillville to Decorah. The strain to my shoulder COULD have also caused the problems I had over the last year, which was from accumulated problems from the past. I have AARP Health Care Options medical coverage which limits me to 10 paid

visits a year, and, though I was having spasms in my hands which was consistent with nerve damage to the wrists, I did not visit a doctor, and it was not something a chiropractor treats. It was on a periodic basis as I described in my deposition.

Doc. No. 47. Leventhal also provides a letter from Murphy Chiropractic Clinic, dated January 26, 2009, which states, in part:

Mr. Willy Leventhal was first treated at this clinic on July 14, 2005 for low back pain, mid dorsal pain, acid reflux, left chest pain, neck pain, headaches, ringing in the ears and fatigue due to stress related to the death of his father, stepmother and sister. He was researching and writing a book as well as being the executor of his father's estate. On his second visit on 7-19-05, he was a lot better. On 8-15-05 he was again treated for low back pain (5L), mid dorsal pain (T8 and T 6) and cervical spine pain (2d Cir. 19) and related issues, however these symptoms have improved. Also on 8-15-05 he stated that he was on a bike ride. That usually would not make him sore, but he continued to have similar symptoms into October 2005.

Doc. No. 53.

Although Leventhal has produced evidence of injuries, the evidence does not provide a genuine issue of material fact related to his excessive force claim. First, the medical evidence fails to tie the ailment to the alleged excessive force—Leventhal provides very little evidence that he has an actual injury resulting from the handcuffs. *See Hanig*, 415 F.3d at 824. Even if Leventhal had asserted that his pain from the handcuffs, alone, should be an injury worthy of redress, such an injury would be minor. *Id.* ("For the application of handcuffs to amount to excessive force, there must be something beyond minor injuries.") Nerve damage may be an injury that is "beyond minor," but again, Leventhal has failed to generate a genuine issue of material fact concerning whether the

handcuffs caused the alleged nerve damage. Second, Leventhal has neither explained nor produced evidence that the method of handcuffing and transporting Schaffer employed was "unreasonable." *See Guite*, 147 F.3d at 750. Instead, the evidence shows that Schaffer was diligent in assuring that the cuffs were adjusted properly. The court does not dispute Leventhal's claim that the handcuffs were painful, but the court finds that the record lacks evidence of Leventhal's injury and is devoid of evidence that Schaffer acted unreasonably. As a result, the court finds that any pain Leventhal has endured is unfortunate but not the result of a constitutional violation. Therefore, Leventhal's objections regarding the use of excessive force will be denied.

### D. Leventhal's State Law Claims

Judge Zoss found that Leventhal's state law claims against Schaffer and Ritzman should be dismissed because Leventhal failed to exhaust his administrative remedies before filing suit. *See* Iowa Code § 669.5(1) ("A suit shall not be permitted for a claim under this chapter unless the attorney general has made final disposition of the claim."). Judge Zoss found that "[i]t is undisputed that Leventhal has not filed a claim under the Iowa Tort Claims Act with the state appeal board." Doc. No. 45. Neither Leventhal nor the defendants objected to Judge Zoss's finding in this regard. In fact, neither party objected to Judge Zoss's recommendation to dismiss the state law claims. The court finds that the state law claims should be dismissed due to Leventhal's failure to exhaust his administrative remedies before filing suit pursuant to Iowa Code § 669.5.

## IV.  LEVENTHAL'S APPEAL OF ORDER DENYING MOTION TO AMEND

Leventhal filed a motion to amend his complaint to add additional parties and reflect damages in the amount of $630,000, rather than $63,000.  Judge Zoss denied this motion, finding that Leventhal had not shown good cause to amend his complaint.  Doc. No. 49. Federal Rule of Civil Procedure 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2). The rule explains that "[t]he court should freely give leave when justice so requires."  *Id.* The Eighth Circuit Court of Appeals has explained that, "[a]lthough it is well settled that leave to amend should 'be freely given when justice so requires,' Fed.R.Civ.P. 15(a), permission to amend may be withheld if the plaintiff does not have at least colorable grounds for relief, or if []he is guilty of undue delay, bad faith, dilatory motive, or if permission to amend would unduly prejudice the opposing party."  *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).  "The policy favoring liberal allowance of amendment does not mean that the right to amend is absolute."  *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989).

Leventhal seeks to amend his complaint to reflect a greater amount of damages for the following reason:

> [I]f I had known as much about what Sgt. Schaffer did as shown by his words on the "JSP arrest video/audio", and his statements to Captain Mike Winter and the actions of Capt. Winter and Lt. Loftus in aiding and condoning Sgt. Schaffer's actions, as well as Sgt. Schaffer's testimony at Deposition, I would have asked for ten times the $63,000 that was in the original complaint due to the far more serious lies by Sgt. Schaffer, and the knowning cover up by Lt. Loftus and Captain Winter.  While I cannot say with certainty that there was a conspiracy to deny my civil rights (which is also a

> criminal offense to my understanding), the matter is much
> more egregious and willful, and not simply a mistake that was
> unintended or unknowing.  Therefore I want to amend both
> complaints to the damage amount of $630,000.
>
> I did not have the names of the two superior officers until
> Nov. and could not therefore have entered them into the case
> at the time of the original complaint.

Doc. No. 51.  In other words, Leventhal appears to be claiming that, through discovery, he has learned that there were actions that are similar to a conspiracy to deny his civil rights that made him realize Loftus and Winter should be named in the complaint. Leventhal also argues that new information has made him realize that his damages are much greater.

Leventhal's only remaining claim is a § 1983 action for unlawful arrest against Schaffer in his personal capacity.  The court does not find it in the interest of justice, and does not find good cause, to allow Leventhal to amend his complant, considering the one remaining claim and the untimeliness of Leventhal's motion—the court notes that the deadline to amend pleadings was February 1, 2008, and discovery closed in this case on November 1, 2008.  Not having found good cause to amend the complaint, and re-open discovery, the court denies Leventhal's motion to amend.

## V.  LEVENTHAL'S UNTIMELY REQUEST FOR A JURY TRIAL

On March 9, 2009, Leventhal filed an untimely motion for a jury trial.  Doc. No. 54.  Leventhal argues that his failure to make a timely jury demand should be excused because the defendants' counsel had agreed that he would request it.  Leventhal also filed a *pro se* supplement to his jury demand, on March 23, 2009, which was a letter sent from

a friend of Leventhal's.  Doc. No. 56.  The letter provides excuses for Leventhal's failure to make a timely jury demand.

The defendants resisted this motion on March 11, 2009.  The defendants admit that they had originally suggested that they, the defendants, would request a jury trial.  However, they claim that this discussion took place before the defendants had answered Leventhal's complaint and that, once they filed an answer, a bench trial had already been set.  Regardless of whether Leventhal was confused about the defendants' representation that they would request a jury trial, the defendants claim that the year that has passed since the bench trial was set weighs against allowing the untimely demand.

The Seventh Amendment to the United States Constitution states:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law.

U.S. CONST. amend. VII.  The failure to make a timely demand for a jury trial waives the right.  *See* Fed. R. Civ. P. 38 ("A party waives a jury trial unless its demand is properly served and filed.").  However, the Eighth Circuit Court of Appeals has explained that each "belated request" for a jury trial should be approached with an "open mind."  *Littlefield v. Fort Dodge Messenger*, 614 F.2d 581 (8th Cir. 1980).

Leventhal's request is untimely and, therefore, he has waived his right to a jury trial.  In fact, a bench trial, as opposed to a jury trial, was originally set in this case on December 17, 2007, which was well over a year ago.  *See* Doc. No. 13.  Leventhal provides a reason for failing to make a timely jury demand, the agreement with the defendants, and this reason has been substantiated by the defendants.  Although the court has the discretion to grant Leventhal's request and approaches the possibility with an open

mind, *see id.*, there are two main reasons why Leventhal's request is denied. First, the court finds that Leventhal's reliance on opposing counsel, even as a *pro se* plaintiff, was unreasonable. Without deciding the professionalism of the defense counsel's decision to go back on his word to request a jury trial, Leventhal had an opportunity to request a jury trial without defense counsel's assistance. As a result, the court finds that the agreement is not good cause to, now, grant Leventhal's request for a jury trial. Second, Leventhal's delay was unreasonably long—Leventhal has known that this case was scheduled as a bench trial since approximately December 17, 2007. The court, therefore, denies Leventhal's request for a jury trial, and in effect, grants defendants' motion to strike the jury demand. Doc. No. 55.

## VI.  OTHER MISCELLANEOUS ISSUES

On January 20, 2009, Leventhal filed a *pro se* supplement/addendum regarding his motion to amend his complaint and objections to Judge Zoss's report and recommendation. Doc. No. 48. Beginning on page 57, however, Leventhal appears to be following up or seeking clarification on some earlier rulings made by Judge Zoss. First, Leventhal asks the court to "follow up on the Order by Chief Magistrate Judge Zoss for the Iowa DOJ to provide Sgt. Schaffer's Personnel file...." The court notices that Judge Zoss did not order the production of the entire personnel file, and that the defendants were required to produce the documents in Judge Zoss's order dated October 16, 2008. Doc. No. 30.

Second, Leventhal asks for an inspection of the patrol car tape related to this case to ensure its authenticity. Leventhal specifically questions a portion of the tape related to the reason for adding Loftus as a party in this case—Leventhal's motion to amend his complaint to add Loftus is denied in this order. The court does not find good cause to grant this request, and refers Leventhal to Judge Zoss's November 26, 2008 order (Doc.

No. 43), where Judge Zoss found that the defendants had complied with the court's November 10, 2009 order, which required Mr. Hunacek "to review the videotape made at the time of plaintiff's arrest and ensure that a copy of the entire video has been produced to the plaintiff." Doc. No. 39. Leventhal's request for additional action by this court regarding the videotape is denied.

Third, Leventhal requests an audio recording or a transcript of the phone conference Mr. Hunacek and Judge Zoss had regarding the personnel file and videotape. The court notes that if such a recording or transcript exists, Leventhal can request it from the clerk of court without this court's intervention.

## VII. CONCLUSION

THEREFORE, the court finds that:

1. Leventhal's objections to Judge Zoss's Report and Recommendation on Defendants' Motion for Summary Judgment (Doc. No. 45) overruled except for his objection to Judge Zoss's finding that Schaffer was entitled to qualified immunity—the report and recommendation is modified to include the finding that Schaffer is not entitled to qualified immunity as a matter of law. The report and recommendation, as modified, is accepted. As a result, defendants' Motion for Summary Judgment (Doc. No. 23) should be granted in part and denied in part as follows:

   a. Defendants' motion for summary judgment is **denied** as to Leventhal's § 1983 claim related to Leventhal's alleged unlawful arrest and Schaffer's qualified immunity.

   b. Defendants' motion for summary is **granted** as to Leventhal's § 1983 claim related to Leventhal's alleged excessive force claim.

       c.     Defendants' motion for summary judgment is **granted** as to Leventhal's ITCA claims.

      2.  Leventhal's appeal of Judge Zoss's order denying Leventhal's motion to amend his complaint is **denied**.  Doc. No. 51.

      3.    Leventhal's belated motion for a jury trial is denied, and, in effect, defendants' motion to strike (Doc. No. 55) is **granted**.

      **IT IS SO ORDERED.**

      **DATED** this 24th day of March, 2009.

<br>

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA